Wayne A. LEWIS, Jr., et al., Plaintiffs,

v.

CITY OF TOPEKA, KANSAS,
et al., Defendants.

No. 02–2613–GTV.

United States District Court,
D. Kansas.

Feb. 18, 2004.

Elizabeth R. Herbert, Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, for Plaintiffs.

J. Steven Pigg, Chanda M. Feldkamp, Fisher, Patterson, Sayler & Smith, Mary B. Mudrick, Legal Department, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

G. THOMAS VANBEBBER, Senior District Judge.

Plaintiffs bring this civil rights suit pursuant to 42 U.S.C. § 1983 against the City of Topeka and five Topeka police officers. Plaintiffs allege that they were wrongfully subjected to a pretextual traffic stop in violation of the Fourth Amendment. They allege that the Topeka Police Department has a "policy of targeting automobiles for investigation without observation or information about specific criminal conduct," also violating the Fourth Amendment. Wayne and Tyrone Lewis further allege that the police officers used excessive force on them.

The case is before the court on Defendants' motions for summary judgment (Docs. 76 and 79). For the following reasons, the court grants the motions.

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiffs' case. Immaterial facts and facts not properly supported by the record are omitted. References to testimony are from depositions, unless otherwise noted.

In December 2000, the Topeka Police Department had the Street Crimes Action Team ("SCAT") to focus on street level drug interdiction and gang intervention. SCAT officers concentrated on locations where there were reports of narcotics, gangs, or other illegal activities. One of the bars that SCAT targeted was Fidel's. The police department had received information that there had been gang activity and fights at Fidel's, that narcotics were being sold out of the parking lot, and that the bar was operating after-hours.

On the evening of December 8, 2000, Officers Mark Hilt and Pat Hannah, who are not Defendants in this action, were conducting surveillance at Fidel's. When they saw a car leaving the parking lot that aroused their suspicion, they radioed a description to other officers. If Officers Hilt and Hannah observed a traffic violation, they also radioed that information. If they did not observe a violation, the other officers followed the vehicle to see if the driver committed a traffic infraction.

Plaintiffs Tyrone Lewis, Wayne Lewis, Lila Lewis Washington, Stephanie Graham, and Geri Lumsford left Fidel's around 1:30 a.m. Ms. Washington drove Tyrone's 1964 gray Cadillac as they were leaving the establishment. Officer Hilt radioed that a "big old boat" was leaving the lot and might continue down the alley. He described it as a "real, real old huge car" and said that it was "loaded down," which meant that it was full of passengers. Officer Hilt testified in an affidavit that the

car aroused his suspicion because it stopped in the alleyway and the occupants engaged in conversation with people in the parking lot. In his work with the police department, Officer Hilt had observed similar parking lot conversations that resulted in arrests for illegal drug sales and possession. He did not indicate that he saw such activity on the radio, and Plaintiffs deny that they stopped in the alleyway.

Officer Chris Bowers began following Plaintiffs after they left Fidel's. After about two blocks, he claims that Ms. Washington made a lane change without using a turn signal. Plaintiffs all maintain that Ms. Washington did use her turn signal, but admit that she did not use it for 100 feet, as required by Kansas law. Both the right and left turn signals on the Cadillac had a history of malfunctioning on occasion. Officer Bowers radioed that he had observed a lane change violation, and Officer Hilt radioed that someone should back up Officer Bowers because the vehicle had six occupants. Eventually, six additional officers arrived at the scene.

Officer Bowers pulled the Cadillac over and asked Ms. Washington to see her driver's license. He then spoke briefly with two other officers and noted that there was a lot of activity in the car. The three officers discussed that the occupants were not wearing seat belts. Officer Bowers then approached the passenger side of the vehicle to ask about the seat belts. At that time, he asked all of the occupants for their drivers' licenses, and the conversation quickly became heated with Tyrone. Officer Bowers then ordered Tyrone to step out of the car. Tyrone alleges that the officers began using excessive force. Wayne began yelling at the officers, and two officers pulled him out of the car.

After the officers had arrested both Tyrone and Wayne, Officer Bowers asked Ms. Washington to step out of the car. He allowed her to sit in the back of his patrol car to stay warm while he checked her license and registration. Within a few minutes, Officer Bowers walked her back to Tyrone's car and told her that she was free to go home. He did not issue her a ticket for the lane change violation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### III. DISCUSSION

Plaintiffs originally brought numerous claims against the police officers and the City of Topeka. In the pretrial order, they pared their claims down to the following: (1) All Plaintiffs claim that they were unreasonably stopped and detained in violation of the Fourth Amendment and that the City had a policy of promoting or allowing such unlawful actions; and (2) Plaintiffs Tyrone and Wayne Lewis claim that they were subjected to excessive force in violation of the Fourth Amendment. The City of Topeka has moved for summary judgment with respect to all claims, but the Officer Defendants have only moved for summary judgment with respect to the unreasonable detention claims.

■ The Officer Defendants claim that they are entitled to qualified immunity with respect to Plaintiffs' unreasonable detention claims. In determining whether Defendants are entitled to qualified immunity, the court first must determine whether Plaintiffs have " 'asserted a violation of a constitutional right at all.' " *Moore v. City of Wynnewood,* 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). For the following reasons, the court determines that Plaintiffs have not met their burden.

### A. Unreasonable Detention Claims

*1. Claims against Officer Bowers*

Plaintiffs claim that Officer Bowers wrongfully stopped and detained them be-cause Lila Lewis Washington used her turn signal before changing lanes, but Officer Bowers allegedly pulled her over for failing to use her turn signal. While there may be a genuine issue of material fact as to whether Ms. Washington used her turn signal before changing lanes, there is no fact issue as to whether she violated another law for which Officer Bowers was justified in pulling her over. Accordingly, the court grants qualified immunity and summary judgment on this claim.

■ Although Plaintiffs did not specify in the pretrial order that their unreasonable detention claims are only against Officer Bowers, their brief reflects that the claims are only against him. To the extent that Plaintiffs did not intend to abandon their unreasonable detention claims against the other officers, the court grants summary judgment to the other officers. Plaintiffs have failed to show that the other officers personally participated in the alleged unlawful stop and detention. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997) (citation omitted). The other officers merely responded to Officer Hilt's call for back-up for Officer Bowers. "Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for an arrest." *Albright v. Rodriguez,* 51 F.3d 1531, 1536 (10th Cir.1995) (internal and external citations omitted). "[I]nformation received from a fellow police officer is presumptively reliable...." *Harris v. Evans,* 795 F.Supp. 1060, 1064 (D.Kan.1992) (citation omitted). The officers were entitled to rely on Officer Hilt's and Officer Bowers's statements. The court therefore determines that even if

Plaintiffs did not intend to abandon their unreasonable detention claims against the other officers, qualified immunity and summary judgment would be appropriate on those claims.

■ Although the parties dispute whether Ms. Washington activated her turn signal before changing lanes, they do not dispute that she failed to activate her turn signal for the distance required by Kan. Stat. Ann. § 8–1548(b). The Kansas traffic code requires a motorist to use her turn signal for at least one hundred (100) feet before changing lanes. Under Kan. Stat. Ann. § 8–1548(b), Officer Bowers had a valid reason for the traffic stop. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or . . . reasonable articulable suspicion that a . . . violation has occurred. . . ." *United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Absent an invalid traffic stop, Plaintiffs do not have a viable Fourth Amendment claim.

■ Plaintiffs argue that "this is not a case about whether the turn signal was used for the proper distance." Contrary to Plaintiffs' assertions, the fact that Ms. Washington did not use her turn signal for the proper distance is central to this case. A police officer's subjective reason for making an arrest is irrelevant in determining whether the arrestee's Fourth Amendment rights were violated. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Botero–Ospina*, 71 F.3d at 787; *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1557 (D.Kan.1993) (holding that lack of probable cause to arrest for obstruction of official duty did not render arrest unlawful where probable cause existed for another arrestable offense). As long as Officer Bowers had a valid basis for conducting the traffic stop, even if it was not the reason he cited, the traffic stop was valid. *See United States v. Bookhardt*, 277 F.3d 558, 565 (D.C.Cir. 2002) (upholding arrest on different grounds than those cited by officer); *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir.1998) (upholding traffic stop on the basis of an observed traffic violation, notwithstanding detectives' reliance on a different ground); *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) (citation omitted) ("Probable cause need only exist as to any offense that could be charged under the circumstances."); *United States v. Kalter*, 5 F.3d 1166, 1168 (8th Cir.1993) (upholding arrest on different grounds than those cited by officers); *United States v. Mesa–Roche*, 288 F.Supp.2d 1172, 1183 (D.Kan.2003) (upholding traffic stop, even though the deputy made the stop on a mistaken premise, because another premise was valid).

■ Plaintiffs also argue that relying on Kan. Stat. Ann. § 8–1548(b) to establish reasonableness of the traffic stop is improper because Officer Bowers testified in deposition that he normally would not conduct a traffic stop based on a violation of the statute. The Tenth Circuit has specifically rejected this argument: "It is irrelevant, for purposes of Fourth Amendment review, 'whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.'" *Botero–Ospina*, 71 F.3d at 787 (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993)); *United States v. McRae*, 81 F.3d 1528, 1533 (10th Cir.1996).

■ Plaintiffs spend several paragraphs discussing pretextual traffic stops motivated by race and cite portions of *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157 (10th Cir.2003) that address the *Marshall* plaintiff's equal protection claims. Plaintiffs in the instant case have

abandoned their Fourteenth Amendment equal protection claims. The pretrial order states, "[P]laintiffs have acknowledged that they are *not* asserting any independent claim in this case under the equal protection or due process clauses of the Fourteenth Amendment." Despite this acknowledgment, Plaintiffs repeatedly refer to race and assert arguments appropriate for a Fourteenth Amendment equal protection claim, not a Fourth Amendment unreasonable detention claim. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren,* 517 U.S. at 813, 116 S.Ct. 1769. Plaintiffs are simply using the wrong avenue for their claims. *See United States v. Adkins,* 1 Fed.Appx. 850, 851 (10th Cir.2001) (citing *Whren,* 517 U.S. at 813, 116 S.Ct. 1769; *Botero–Ospina,* 71 F.3d at 787) ("[T]he fact that Defendant may have an equal protection claim against the arresting officer has absolutely no bearing on whether the officer's traffic stop was reasonable under the Fourth Amendment.").

■ Finally, it is unclear whether Plaintiffs are also claiming that the duration of the traffic stop was unreasonable. To the extent that they are, the court dismisses their claims.

None of the passengers in the car were wearing seat belts, in violation of Kan. Stat. Ann. § 8–2503(a). For this reason, Officer Bowers decided to check their identifications. Even with this additional police work, the traffic stop lasted only about thirty minutes. *See United States v. Brown,* 24 F.3d 1223, 1226 (10th Cir. 1994) (holding that an investigative deten-

tion was properly limited in scope when it lasted no more than thirty minutes). There is no evidence that Officer Bowers unnecessarily prolonged Plaintiffs' detention, particularly since six passengers were involved, two of whom were eventually removed from the car and arrested. Plaintiffs have pointed to no evidence from which the court can conclude that a genuine issue of material fact exists as to whether the duration of the traffic stop was unreasonable.

For the above-stated reasons, the court grants Defendant Officers' motion for summary judgment with respect to Plaintiffs' unreasonable detention claims.

### 2. Claims against the City of Topeka

■ Plaintiffs seek to hold the City of Topeka liable for violation of their Fourth Amendment rights because the police department allegedly has a "policy of targeting automobiles for investigation without observation or information about specific criminal conduct." Plaintiffs' claims against the City of Topeka are dependent on the viability of the underlying claims for unreasonable detention. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993) (citations omitted). Because the court has granted summary judgment with respect to the underlying claims, the court also grants summary judgment with respect to the claims against the City of Topeka.

■ Plaintiffs have not defined their claims with precision. Their claim against the City could be interpreted as a claim for the "targeting" of Plaintiffs' automobile— that is, for the allegedly pretextual *following* of the automobile as opposed to the actual traffic stop. To the extent that this better characterizes Plaintiffs' claim, the court still grants summary judgment with

respect to the claim. The protection of the Fourth Amendment applies only to a seizure or a search, and a custom or policy of *following* a vehicle does not amount to a seizure or search. *See California v. Hodari*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (stating that a police officer does not seize a suspect when he yells, "Stop, in the name of the law," and the suspect continues to flee).

### B. Excessive Force Claim against the City of Topeka

The court cannot ascertain from the pretrial order whether Plaintiffs intend to bring municipal liability claims against the City of Topeka for their officers' alleged use of excessive force. Plaintiffs only seek damages from the City of Topeka for "the unconstitutional policy of stopping vehicles without observation or information of actual criminal conduct." Plaintiffs also do not address an excessive force claim against the City in their summary judgment brief. Out of an abundance of caution, the court will address the issue briefly.

A municipality may only be held liable for a § 1983 claim if it has established a policy or custom which causes the alleged injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A qualifying policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A qualifying custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The record is devoid of evidence suggesting that the City of Topeka endorsed a policy or custom of using excessive force. To the contrary, all of the evidence before the court, submitted by the City of Topeka, indicates that the City did not have such a policy or custom. The Topeka Police Department Policy states, "This Department recognizes and respects the value of life. It is the policy of this Department that police officers acting in a law enforcement capacity will only use the amount of force necessary to bring an incident under control effectively, while protecting the lives of the officer and others." Topeka police officers are taught to use the minimum force necessary to execute an arrest. To the extent that Plaintiffs intended to bring an excessive force claim against the City, the court grants summary judgment with respect to the claim.

As a final note, the court has not addressed many of the arguments Defendants make in their briefs. After the filing of Defendants' motions for summary judgment, the pretrial order was filed in this case. Plaintiffs omitted several of their claims from the pretrial order that Defendants had addressed in their summary judgment briefs. The pretrial order supersedes the complaint and controls the subsequent course of litigation. *Franklin v. United States*, 992 F.2d 1492, 1497 (10th Cir.1993); Fed.R.Civ.P. 16(e). The court therefore need not address Defendants' arguments regarding Plaintiffs' abandoned claims.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motions for summary judgment (Docs. 76 and 79) are granted. Defendant City of Topeka is dismissed from the case. Only Plaintiffs Wayne and Tyrone Lewis's claims for excessive force against the police officers remain in the case.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**