NOT DESIGNATED FOR PUBLICATION

No. 121,231

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID RAY STUCKEY JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed June 5, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER, J. and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: After a search incident to arrest, officers found drugs and drug paraphernalia on David Stuckey Jr. The State charged him with several drug offenses and criminal trespass. Stuckey moved to suppress the evidence, arguing the officers lacked probable cause to arrest him. The district court disagreed and, after a trial on stipulated facts, convicted Stuckey. On appeal, the sole argument Stuckey properly raises is that the officers lacked probable cause to arrest him for criminal trespass. Agreeing with the district court that the officers had probable cause to arrest Stuckey, we affirm.

1

*Factual and Procedural Background*

In March 2018, police arrested Stuckey for criminal trespass. They searched him right after his arrest and found on his person 6.5 grams of cocaine, 41.7 grams of marijuana, 9 hydrocodone pills, 16 plastic baggies, a digital scale, a loaded .22 revolver, and 27 rounds of ammunition. The State charged Stuckey with possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, possession of hydrocodone, possession of drug paraphernalia, and criminal trespass.

Before trial, Stuckey moved to suppress all evidence found during the search. Stuckey argued the officers lacked probable cause to arrest him, so they could not have searched him incident to a *lawful* arrest. The district court held a hearing on the motion and admitted the following evidence.

On the morning in question, Stuckey, Talisa Crosby, and Paul Robinson walked to Central Park Towers in Kansas City to visit Marvin Daniels. The Central Park Towers is a government operated facility. This building is pass card protected. Rules require visitors to be accompanied by a resident, to sign in at the front desk, and to present a valid photo ID. But Mark Gatson, a Central Park Towers' resident, testified that when the door is open visitors sometimes enter without being accompanied by residents and sometimes no one is at the front desk and no sign-in book is available.

Robinson testified that when they came to visit Daniels, they signed in for their visit, but no one was at the front desk to check their ID's and no one escorted them to Daniel's apartment. Sometime later, Crosby, Robinson, and Stuckey left the building unescorted. Crosby and Robinson left the premises, but Stuckey soon returned to Central Park Towers to visit Gatson.

But when Stuckey tried to reenter the building, Don Wainwright, the building's maintenance worker, told him that he could not enter without a resident escort and an ID. An argument erupted. Wainwright testified that Stuckey threatened to shoot him and was generally being "irate and belligerent" and, potentially, drunk. Wainwright walked away and went to the office.

Unable to get into the building, Stuckey tried without success to call Gatson on his cellphone. He then looked up and called Gatson's name. Gatson testified that from his tenth-floor apartment he heard Stuckey calling his name and went down to let him in. Both Gatson and Stuckey testified that Gatson opened the door for Stuckey and escorted him upstairs. Both testified that the sign-in sheet was not at the front desk and no one was there to check Stuckey's ID. Gatson testified that Stuckey was a welcome guest in his apartment.

Shawnee Burnes worked the front desk in the building that day. The residents and staff have been instructed to not open the door for anyone. Stuckey became irate and belligerent after Wainwright told Stuckey he could not come in. Because Stuckey was yelling, cursing, and making threats, Burnes called the police. Stuckey had a bottle of liquor but had not been physical with anyone. Neither Burnes nor Wainwright saw Gatson escort Stuckey into the building.

When police arrived, Stuckey was no longer outside. Officers Christopher James and Robert Peck met with the building's manager, Margaret Lysakowski. James testified that his only information about whether Stuckey could be in the building came from her. Lysakowski testified that she had reviewed security footage. It showed that Stuckey had entered when someone left the building and gone to Gatson's apartment. Lysakowski told the officers what she had seen on the security footage. She told them that Stuckey had been told he could not enter the building because he was violating its policies. Wainwright told the officers that Stuckey had threatened to shoot him.

3

The officers, Lysakowski, and Wainwright then went to Gatson's apartment to escort Stuckey out of the building. Gatson answered the door, Wainwright identified Stuckey as the man who had threatened him, and the officers asked Stuckey to come out of the apartment. In the hallway, Wainwright and Stuckey began to argue again and the police had to "jump in between" them. James testified that to avoid a disturbance in the hallway they walked Stuckey to the elevator and rode down without Wainwright. While in the elevator, James smelled raw marijuana, which he had not smelled before. He thought the odor was coming from Stuckey. After Lysakowski signed a ticket for trespassing, James arrested Stuckey for criminal trespass.

Once outside, the officers searched Stuckey. They found cocaine, marijuana, hydrocodone pills, plastic baggies, a digital scale, a loaded .22 revolver, and ammunition on Stuckey. That evidence gave rise to his charges and conviction.

Based on the above evidence, the district court denied Stuckey's motion to suppress. The parties then agreed to submit the case for a bench trial on stipulated facts. The district court found Stuckey guilty of all counts and sentenced him to 51 months in prison with 36 months of postrelease supervision.

Stuckey timely appeals.

*Did the Officers Have Probable Cause to Arrest Stuckey for Criminal Trespass?*

Stuckey first argues that the officers lacked probable cause to arrest him for criminal trespass. Stuckey believes his status as a welcome guest should have been apparent to the officers when they saw him peaceably in Gatson's apartment. Instead, he alleges, the officers believed Lysakowski's "unsubstantiated" claim that Gatson had not escorted Stuckey into the building.

4

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). "[A] warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement." *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). The State relies solely on the search incident to lawful arrest exception.

Stuckey asserts that because his arrest was unlawful, the search incident to his arrest was unlawful. See *State v. Sanders*, 310 Kan. 279, 297, 445 P.3d 1144 (2019) (finding once a legal arrest is made, the officer can search the arrestee's person within the permissible scope of the search incident to lawful arrest exception) (citing *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2063, 195 L. Ed. 2d 400 [2016]). He asks us to reverse his conviction and remand the case with directions to suppress all evidence found in the search of his person.

*Standard of Review*

Our standard of review for a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. We review the ultimate legal conclusion, however, by using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The State carries the burden to prove that a search and seizure was lawful, both under the Fourth Amendment to the United States Constitution and under Kansas statute.

5

*State v. Ton*, 308 Kan. 564, 568, 571-72, 422 P.3d 678 (2018); *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940 (2004). In a motion to suppress, however, the defendant must establish the facts necessary to support the suppression motion in the district court. K.S.A. 22-3216; see *State v. Estrada-Vital*, 302 Kan. 549, 556-57, 356 P.3d 1058 (2015).

*The officers had probable cause that Stuckey was trespassing.*

Some material facts are in dispute here, as the district court noted:

"There's been disagreement as to whether he showed ID. There's been disagreement as to who brought him up. There's been disagreement as to when he was yelling from the ground floor up to the 10th floor who buzzed him in or didn't buzz him in because different apartment complexes, et cetera, et cetera. So virtually everything is in contention."

Stuckey disputes these facts and asks us to reweigh the evidence, discounting the staff's and the officers' testimonies. He asks us to find that the officers knew or should have known Stuckey was a lawful guest but chose to credit Lysakowski's "unsubstantiated claims." But we do not reweigh the evidence or assess the credibility of witnesses. *Hanke*, 307 Kan. at 827. Instead, we determine whether the district court's factual findings could be supported by substantial competent evidence. *Doelz*, 309 Kan. 138.

The district court found there was no disturbance when the officers arrived. They knew that Stuckey had been threatening people and acting aggressively because they would not let him in the building. Lysakowski told them that Stuckey did not follow the rules and, despite the warning, went upstairs. Upstairs, Wainwright identified Stuckey as the man who had threatened him. The district court found that the officers planned to write Stuckey a ticket for trespassing and remove him from the premise, as building management had authorized them to do. It also found that the officers properly relied on

6

the management's version of the rules. Based on our review of the record, we find legal and relevant evidence that a reasonable person could accept as adequate to support the district court's factual findings.

As to the legal question, the district court held that officers had probable cause to believe that Stuckey was trespassing. We review that determination de novo.

A warrantless arrest is justified when an officer develops a probable cause belief the individual has committed or is committing an offense. *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). Our Supreme Court has recently defined probable cause:

> "'"Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
>
> "'"When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt."' [Citations omitted]" *State v. Chavez-Majors*, 310 Kan. 1048, 1055, 454 P.3d 600 (2019).

K.S.A. 2019 Supp. 21-5808(a)(1)(A) defines criminal trespass.

> "(a) Criminal trespass is entering or remaining upon or in any:
> (1) Land . . . [or] structure . . . by a person who knows such person is not authorized or privileged to do so, and:
> (A) Such person enters or remains therein in defiance of an order not to enter or to leave such premises or property personally communicated to such person by the owner thereof or other authorized person."

7

Criminal trespass is a misdemeanor. K.S.A. 2019 Supp. 21-5808(b).

The totality of the circumstances within the officers' knowledge was sufficient to warrant a person of reasonable caution in the belief that Stuckey had committed criminal trespass. Both Lysakowski and Wainwright, authorized persons, had told Stuckey he could not enter the building unless he followed the building's rules. But Stuckey entered in defiance of their order, knowing he was not authorized to do so, according to Lysakowski and Wainwright. The district court credited their testimony.

To form probable cause, the officers were not required to have firsthand knowledge of Stuckey's trespass. "'It is enough that the police officer initiating the chain of communication either had firsthand knowledge or received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth.'" *State v. Ibarra*, 282 Kan. 530, 545, 147 P.3d 842 (2006) (quoting *State v. Clark*, 218 Kan. 726, 732, 544 P.2d 1372 [1976]). The officers properly relied on management's firsthand information that Stuckey was trespassing. And, as the district court found, the management saw the events and knew the rules better than Stuckey or Gatson.

Stuckey claims that the officers should have investigated more, rather than taking management's word over his word and Gatson's. But nothing in the record shows that Stuckey or Gatson told the officers that Stuckey might be there lawfully. The officers acted on the only information known to them when they arrested Stuckey for criminal trespass. See *State v. Boggess*, 308 Kan. 821, 828-29, 425 P.3d 324 (2018) (stating the operative question is what was before the officers at that moment in time). Officers did not need to "conduct a mini-trial" before arresting Stuckey. See *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996) (stating the police did not have a duty to investigate defendant's alibi before making a probable cause determination). And it was

8

reasonable for the officers to accept the management's information about Stuckey's unlawful presence. See *People v. Finch*, 23 N.Y.3d 408, 417-18, 15 N.E.3d 307 (2014) ("In many situations an officer may be justified in accepting without independent verification a property manager's assertion that management is entitled to decide who may enter the property."). And had the officers investigated more, they likely would have viewed the security footage which objectively showed Stuckey entering the building when someone left it, in violation of the rules.

The district court properly ruled that the officers lawfully arrested Stuckey because they had probable cause to believe he was trespassing. The officers thus had the ability to conduct a search incident to Stuckey's lawful arrest. They did so, legally finding the evidence that led to Stuckey's convictions.

We find it unnecessary to address the State's alternative argument that police had probable cause to arrest Stuckey for possession of marijuana based on the odor coming from his person. See *State v. Hubbard*, 309 Kan. 22, 40, 430 P.3d 956 (2018) (if the circumstances warrant it, the odor of marijuana may supply probable cause); *Lewis v. City of Topeka*, 305 F. Supp. 2d 1209, 1214 (D. Kan. 2004) ("A police officer's subjective reason for making an arrest is irrelevant in determining whether the arrestee's Fourth Amendment rights were violated.").

*Stuckey has not preserved the issue whether the officers had probable cause to arrest him under K.S.A. 22-2401(c)(2)(A)-(C).*

Stuckey next claims the officers lacked probable cause to arrest him for a misdemeanor as required by K.S.A. 22-2401(c)(2)(A)-(C). That statute requires officers to have probable cause of additional factors when they arrest a person for a misdemeanor not committed in their presence. Under that circumstance, the officer must have not only

9

probable cause that the person is committing or has committed a misdemeanor, but also probable cause to believe:

> "(A)   The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;
> "(B)   the person may cause injury to self or others or damage to property unless immediately arrested; or
> "(C)   the person has intentionally inflicted bodily harm to another person."
> K.S.A. 22-2401(c)(2)(A)-(C).

Stuckey claims that even if the officers had probable cause to believe he had committed misdemeanor criminal trespass, they lacked probable cause of any of these three statutory factors necessary for his immediate misdemeanor arrest.

But Stuckey did not raise this claim to the district court. He neither cited K.S.A. 22-2401(c), nor mentioned the statute's added criteria for a misdemeanor arrest. The State correctly argues that Stuckey failed to preserve his challenge under K.S.A. 22-2401(c)(2). If an issue was not raised in the district court, it generally cannot be raised on appeal. See *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014).

K.S.A. 22-3216 (1) and (2) requires "a defendant aggrieved by an unlawful search and seizure" to move in writing for suppression before trial and "state facts showing wherein the search and seizure were unlawful." It also provides that "[t]he judge shall receive evidence on any issue of fact necessary to determine the motion." K.S.A. 22-3216(2). So defendant's suppression motion initially guides the district court's factual findings. See *Estrada-Vital*, 302 Kan. at 557. If a defendant narrows the scope of his or her argument, leading to a suppression hearing focused on a particular issue and directing the district court to make certain findings and conclusions related only to that issue, we need not address on appeal the merits of a broader claim. See *Ton*, 308 Kan. at 571-72.

That's the case here. Stuckey's written motion and oral arguments to the district court focused on the Fourth Amendment issue whether the officers had probable cause to believe that he was trespassing. Stuckey did not mention the statutory issue under K.S.A. 22-2401(c)(2)(A)-(C). So the district court's finding that "the officers acted with probable cause" did not reflect any conclusions about the statute's requirements. Although the record contains some evidence that may satisfy the statute's terms, we decline to address the merits of this issue because the district court did not do so.

We have repeatedly cautioned parties to present all the grounds for suppression in one pretrial hearing to the district court:

> "'Nothing in this statute permits the defendant to present only some of the grounds upon which he or she argues the evidence should be suppressed and then later argue different grounds for the suppression at a later stage of the proceeding. K.S.A. 22-3216 indicates all of the grounds supporting the suppression of evidence must be raised in a motion to suppress prior to trial. Additionally, there is no support in K.S.A. 22-3216 to permit this court to entertain such a motion based on new factual grounds for the first time on appeal, and doing so would defeat the purpose of K.S.A. 22-3216.' *State v. McLarty*, No. 117,392, 2018 WL 1546282, at *6 (Kan. App. 2018) (unpublished opinion)." *State v. Farner*, No. 118,839, 2019 WL 1496139, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1066 (2019).

The parties cannot piecemeal their theories about the legality of a search and try them seriatim. Nor can they raise on appeal different theories for suppression than they argued to the district court.

Because Stuckey never argued suppression under K.S.A. 22-2401(c)(2)(A)-(C) to the district court, we decline to address that argument for the first time on appeal.

Affirmed.