No. 103,334

KENNETH W. SLOOP, JR., *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.

(290 P.3d 555)

Opinion filed December 14, 2012.

*Kenneth B. Miller*, of Rork Law Office, Topeka, argued the cause and was on the brief for appellant.

*James G. Keller*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: Kenneth W. Sloop, Jr., appeals from an administrative action by the Kansas Department of Revenue (KDOR) suspending his driving privileges for 1 year under K.S.A. 2008 Supp. 8-1014(a)(1). Per this statute, privileges can be suspended for refusing to take a breath test the arresting officer is authorized to request under K.S.A. 2008 Supp. 8-1001(b). The district court and Court of Appeals affirmed the administrative suspension.

We conclude the officer's statutory authority to request Sloop to take the breath test depends upon a valid arrest. We additionally conclude the arrest was invalid because the officer had no probable cause to support it. And we further conclude Sloop's refusal to take a breath test the officer had no statutory authority to request cannot be the basis for suspending his driving privileges under K.S.A. 2008 Supp. 8-1014(a)(1). So we reverse the lower courts' decisions and reinstate his driving privileges.

## FACTS

The essential facts are straightforward. Around midnight on October 24, 2008, Topeka police officer Cris Bergerhofer noticed Kenneth Sloop make a left-hand turn from the southbound lane of Gage Boulevard. While Sloop committed no traffic violations in making his turn, Officer Bergerhofer followed Sloop because he was "sitting unusually close to his steering wheel" and because he had been somewhat hesitant going into his turn (started turning, stopped, and started turning again). Bergerhofer followed Sloop for about 8 to 10 blocks. During that time, Sloop did not commit a traffic infraction. But because Sloop's tag light was out, Bergerhofer activated his emergency lights and stopped Sloop.

Bergerhofer requested Sloop's driver's license, and Sloop handed it over without fumbling it. According to Bergerhofer, both Sloop and his unnamed passenger smelled of alcohol, and Sloop's eyes were watery and bloodshot. When Bergerhofer asked if he had been drinking, Sloop replied, "Nothing really," and then, according to Bergerhofer, said that he had "like one beer at a friend's

house." Bergerhofer did not ask Sloop when he had consumed the beer.

Bergerhofer testified that Sloop's speech was "impaired" but not "slurred." According to Bergerhofer, "impaired" meant "not as clear as it could be but [] not inherently slurred either."

Bergerhofer then ordered Sloop out of the car. Sloop did not stumble upon exiting and was steady when walking to the back of the car. Bergerhofer had him complete the horizontal gaze nystagmus test, whose results were not offered at the later hearing. Sloop also performed a preliminary breath test, the results of which also were not offered at the hearing because Bergerhofer later realized at the police station the test had been administered improperly. After the preliminary breath test, Bergerhofer arrested Sloop and took him to the station in handcuffs for further testing. Bergerhofer stated that he took Sloop to the station because he wanted to film the field sobriety tests and his squad car lacked video equipment.

At the station, Bergerhofer performed two field sobriety tests. On the walk-and-turn test, Sloop was expected to take nine heel to toe steps on a straight line, make a turn, and then take the same nine steps back to the starting position. Bergerhofer testified that Sloop failed to touch heel to toe on three of his first nine steps, *i.e.*, Sloop missed by "[a]bout an inch, inch-and-a-half." Sloop also made an incorrect turn because he pivoted instead of taking a series of small steps. The failure to execute a correct turn combined with the failure to touch heel-to-toe meant that Sloop exhibited two clues which, according to Bergerhofer, indicate a possibility of impairment.

On the one-leg stand test, Sloop was expected to stand on one leg with his arms to his side and count for about 30 seconds. Bergerhofer stated that Sloop swayed during this test, which presented one clue of impairment. When asked about how much swaying a person is allowed, Bergerhofer responded, "It's to a degree subjective. Usually if they are swaying, they are swaying." Bergerhofer testified that only one clue meant Sloop passed this test. After performing the two field sobriety tests, Sloop refused to take the evidentiary breath test Bergerhofer requested: the Intoxilyzer 8000.

The district court relied upon the following prearrest evidence: Sloop's breath smelled of alcohol; he had bloodshot and watery eyes; he admitted to having one beer earlier in the evening; and he was stopped in the early morning hours. The court also relied upon the following postarrest evidence: Sloop's failure to step properly on three occasions, his failure to turn as instructed during the walk-and-turn test, and his swaying on the one-leg stand test. Combining this evidence, and relying upon *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, Syl. ¶ 2, 815 P.2d 566 (1991), the court concluded that a reasonable officer could have believed that it was "more than a possibility" that Sloop operated his vehicle while under the influence of alcohol. Although affirming the suspension, the court admitted "[t]he evidence of intoxication . . . is much weaker than the evidence presented in the vast majority of the driver's license suspension actions that come before this Court."

The Court of Appeals affirmed. *Sloop v. Kansas Dept. of Revenue*, No. 103,334, 2010 WL 5140016 (Kan. App. 2010) (unpublished opinion). Among other things, it held substantial evidence supported the district court's conclusion that Bergerhofer had reasonable grounds to believe Sloop was operating a vehicle while under the influence, in violation of K.S.A. 2008 Supp. 8-1001(b). It basically repeated the "more than a possibility" language from *Sullivan* but with a modifier: "A law enforcement officer has such reasonable grounds if, under all the circumstances, a reasonably prudent police officer would believe the person's guilt is 'more than a *mere* possibility. [Citations omitted.]' " (Emphasis added.) 2010 WL 5140016, at *4.

We granted Sloop's petition for review. Our jurisdiction is under K.S.A. 60-2101(b) and K.S.A. 20-3018(b).

### ANALYSIS

*Issue 1: Sloop's arrest was unlawful, which means there was no authority to request he take the breath test under K.S.A. 2008 Supp. 8-1001(b).*

*Standard of review*

Our analysis requires us to interpret K.S.A. 2008 Supp. 8-1001(b). Statutory interpretation is a question of law, and this court's review is unlimited. Accordingly, we are not bound by the lower courts' interpretations. *State v. Hopkins*, 295 Kan. 579, 285 P.3d 1021, 1023 (2012).

*Discussion*

By Kansas statute, any person who operates or attempts to operate a vehicle in this state is deemed to have given consent to submit to one or more tests of the person's blood, breath, urine, or other bodily substance to determine the presence of alcohol or drugs. K.S.A. 2008 Supp. 8-1001(a). Subsection (b) of that statute establishes the conditions, some in the alternative, that a law enforcement officer must meet to obtain authority for requesting such tests. Because Officer Bergerhofer arrested Sloop and believed he had reasonable grounds to request the later breath test, two of the statute's conditions apply to this case:

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) if [first] *the officer has reasonable grounds to believe* the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . [a]nd [second] one of the following conditions exists: (A) *The person has been arrested* or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both, . . . in violation of a state statute or a city ordinance." (Emphasis added.) K.S.A. 2008 Supp. 8-1001(b).

Sloop challenges the existence of both of these italicized conditions, which is within the scope of the matters allowed at the administrative hearing and thus within the reviewing court's purview. Under K.S.A. 2008 Supp. 8-1020(h)(1), those matters are "(A) A law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both," and "(B) the person was in custody or arrested for an alcohol or drug related offense."

At oral arguments the parties addressed a number of points concerning both of these conditions. But we only need to examine one of Sloop's contentions because we agree with him—and it is dispositive. And here is why.

We begin by acknowledging Officer Bergerhofer arrested and handcuffed Sloop at the scene. The KDOR acknowledged at oral arguments that under our facts the arrest itself was a necessary condition for Bergerhofer to later request Sloop to take the Intoxilyzer test at the station. We observe a number of courts have held that when arresting for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, the arrest must be a lawful one. See *Schuster v. State Dept. of Tax. & Revenue*, 283 P.3d 288, 294 (N.M. 2012) (collecting cases).

In *Schuster*, the New Mexico Supreme Court examined NMSA 66-8-112(F), which contained the conditions authorizing the motor vehicle division to administratively revoke a person's driving privilege. Similar to K.S.A. 2008 Supp. 8-1001(b), two of the necessary threshold conditions included (1) the "officer had reasonable grounds to believe the driver was driving a motor vehicle while under the influence of intoxicating liquor or drugs," and (2) "the person was arrested." NMSA 66-8-112(F)(1) and (2). The *Schuster* court focused on the latter condition, and in analyzing "arrest" it held:

"Whether the exclusionary rule applies in license revocation hearings does not control whether MVD [motor vehicle division] must analyze the constitutionality of the arrest of a driver charged with DWI. The question is did the Legislature intend a finding under Section 66-8-112(F)(2) that 'the person was arrested' to include a finding that the person's arrest was constitutional. If the answer is no, even an unconstitutional arrest will satisfy the requirement in Section 66-8-112(F)(2). If the answer is yes, the legislature has provided the remedy for an unconstitutional arrest: MVD is prohibited from revoking the driver's license. See Section 66-8-112(G)" [If, *inter alia*, the element of "the person was arrested" in 66-8-112(F)(2) is not found by the motor vehicle division, "the person's license shall not be revoked."] *Schuster*, 283 P.3d at 293.

The *Schuster* court concluded, "[C]onsistent with these other jurisdictions, . . . the plain meaning of the word 'arrest' means an arrest that complies with the protections of the Fourth Amend-

ment to the United States Constitution" and the New Mexico Constitution. 283 P.3d at 294. Accordingly, an arrest and the underlying police activity leading to the arrest were required to be constitutional before a driver's license could be revoked under New Mexico's Implied Consent Act.

Particularly under the plain language of our own statute, we agree the arrest must be lawful. See *State v. Hendrix*, 289 Kan. 859, Syl. ¶ 2, 218 P.3d 40 (2009) ("In interpreting a statute, the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. Intent of the legislature is to be derived in the first place from the words used."); *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007) ("An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there."). As noted, K.S.A. 2008 Supp. 8-1001(b)(1)(A) provides that the officer shall request a person to submit to a test deemed consented to if "[t]*he person has been arrested or otherwise taken into custody* for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both . . . ." (Emphasis added.)

By using the disjunctive "or" to introduce the phrase "*or otherwise* taken into custody," the legislature clearly intended to distinguish that general category from the more specific "arrest." But if we interpret the legislature's "arrest" to include an invalid arrest, or if we include an invalid arrest within the generic "otherwise taken into custody," then the legislature's arrest distinction becomes diluted at best and superfluous at worst. After all, the arrest, whether valid or invalid, would be amply covered by "taken into custody." See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, Syl. ¶ 5, 181 P.3d 549 (2008) ("As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation.").

The same problems would occur with a comparable interpretation of the similar language and structure of K.S.A. 2008 Supp. 8-1020(h)(1)(B) regarding the permissible scope of the license sus-

pension hearing when the officer has certified that the driver refused the test. It too distinguishes whether "the person was in custody *or* arrested for an alcohol or drug related offense." (Emphasis added.) See *Schuster*, 283 P.3d at 294 (making same point about New Mexico's statutes: "the person was arrested" appearing in both N.M. Stat. Ann. § 66-8-112(E)(2) for permissible scope of the hearing and in subsection (F)(2) as a required condition of an order revoking driving privileges).

Now that we have established K.S.A. 2008 Supp. 8-1001(b) requires that the arrest be lawful, we next examine whether Officer Bergerhofer effected a lawful arrest of Sloop at the scene. To do so, we first look at the legal standard. To be lawful, a warrantless arrest must be supported by probable cause. See K.S.A. 22-2401(c); *State v. Ramirez*, 278 Kan. 402, 405, 100 P.3d 94 (2004). We have defined probable cause as follows:

"Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004). Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. *Bruch*, 282 Kan. at 775-76. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006). As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010); see *Smith*, 291 Kan. at 515 (holding that the defendant's list of facts did not negate the other factors presented)." *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 (2011).

We have attempted to further explain probable cause by placing its required quantum of proof lower on the evidentiary ladder than the amount of proof needed for a criminal conviction and lower than the amount needed for a civil judgment. So we have added that in attempting to establish probable cause:

" 'It is not necessary that the evidence relied upon establish guilt beyond a reasonable doubt. The evidence need not even prove that guilt is more probable than not. It is sufficient if the information leads a reasonable officer to believe *that guilt is more than a possibility*. [Citation omitted.]' " (Emphasis added.) *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 775-76, 148 P.3d 538 (2006) (quoting *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, 707, 815 P.2d 566 [1991]).

Indeed, just last year *Allen* quoted this italicized language from *Bruch*. See *Allen*, 292 Kan. at 660 ("Trooper Walker had good reason to 'believe that guilt [was] more than a possibility.' See *Bruch*, 282 Kan. at 775-76."). But use of this additional, italicized factor is no longer approved for several reasons. First, it crept into our caselaw apparently without explanation. Second, it has received undue emphasis in the probable cause calculus, sometimes to the exclusion of other considerations. See, *e.g.*, *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998) (exclusively providing that "[p]robable cause to arrest is that quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a *mere* possibility." [Emphasis added.]).

In exploring this unexplained creep, our research shows that for this particular language, *Bruch* cited *Sullivan*, 15 Kan. App. 2d at 707 (Probable cause does not require that the evidence prove guilt beyond a reasonable doubt nor to prove that guilt is more probable than not. "It is sufficient if the information leads a reasonable officer to believe that guilt is more than a possibility."). In turn, *Sullivan* cited *State v. Lamb*, 209 Kan. 453, 467, 497 P.2d 275 (1972) ("It is only necessary that the information led a reasonable officer to believe that guilt is more than a possibility . . . .").

And *Lamb* in turn cited *Draper v. United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). But the applicable pages in the *Draper* opinion, 358 U.S. at 311-13, do not contain any "more than a possibility" language. Indeed, according to *Draper's* primary reference: "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." 358 U.S. at 313 (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 [1925]).

Now that we have clarified the appropriate standard of probable cause to arrest, we can apply it to the facts of this case. In other words, we must determine whether probable cause supports Sloop's arrest—when considering "the information and fair infer-

ences therefrom known to the officer at the time of the arrest." *Bruch*, 282 Kan. at 775-76.

Typically, this court would follow the appropriate standards of review to examine the findings and conclusions of the district court regarding its holding of probable cause to arrest. But in this case that court did not examine this particular question. See *Sloop*, 2010 WL 5140016, at *2 ("The [district] court never did specifically address whether probable cause existed for the arrest."). Nevertheless, at oral arguments the parties debated the issue of probable cause to arrest and effectively invited us to make the determination because the essential facts are undisputed.

In arguing support for probable cause, the KDOR pointed to the early morning hours and Sloop's behavior during the left-hand turn; the strong odor of alcohol in the car, on the passenger, and then on Sloop; Sloop's watery and bloodshot eyes; his "nothing really" response to whether he had been drinking; and his admission to consumption (one beer). In response to questioning, the KDOR cited *Campbell*, 25 Kan. App. 2d at 431, as its best legal support. As the Court of Appeals panel in this case approvingly summarized that decision:

"In *Campbell*, which, as here, involved an administrative appeal of a driver's license suspension, this court held that probable cause to arrest the driver existed when an officer observed the driver speeding [72 mph in a 55 mph zone] at 1:10 a.m., the officer smelled alcohol on the driver, the driver admitted to having a few drinks, and the driver's eyes were glazed and bloodshot." *Sloop*, 2010 WL 5140016, at *4.

But we find it sufficiently distinguishable. The primary factual difference between *Campbell* and the instant case is that Campbell was speeding, *i.e.*, committing a moving violation, while Sloop was driving legally before being stopped for an improper tag light.

More important, the *Campbell* court's articulated test for probable cause to arrest was overly generous to the KDOR, *i.e.*, requiring only "that quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a *mere* possibility." (Emphasis added.) 25 Kan. App. 2d at 431. Furthermore, the *Campbell* panel was not making a de novo determination of probable cause. Rather, it was reviewing the district court's hold-

ing of probable cause for the DUI arrest, a holding the panel declared it was reviewing only for substantial competent evidence to support. 25 Kan. App. 2d at 431. So there is a serious question whether the *Campbell* court felt restricted by either, or both, of these standards in arriving at its holding of probable cause.

We also note that while Bergerhofer observed Sloop's behavior during the turn, he followed Sloop for 8 to 10 blocks without observing further driving concerns. Sloop's speech was not slurred, he did not fumble while producing his license, and he did not stumble when exiting his vehicle and was steady when walking to the rear. We have no way of knowing how much the results of the preliminary breath test (which were later invalidated) contributed to Bergerhofer's decision to arrest at the scene. But we do know that it was not until immediately after Bergerhofer received what he thought were valid results that he arrested Sloop. And unlike the lower courts when they determined that KDOR met the additional condition of "reasonable grounds to believe" under K.S.A. 2008 Supp. 8-1001(b)(1), we do not consider the results of Sloop's field sobriety tests or other postarrest conduct in our probable cause to arrest calculus.

In short, we conclude de novo from the undisputed facts that there was no probable cause for Sloop's arrest. See *Allen*, 292 Kan. at 657 ("Probable cause is determined by evaluating the totality of the circumstances.") The arrest is therefore unlawful. See K.S.A. 22-2401(c) (warrantless arrest requires probable cause); *Ramirez*, 278 Kan. at 405. And a lawful arrest is required before the officer is authorized to request the driver to breathe into the Intoxilyzer 8000 under K.S.A. 2008 Supp. 8-1001(b). See *Schuster*, 283 P.3d at 294. So Officer Bergerhofer had no statutory authority to request Sloop to take this test at the police station.

Sloop's driving privileges were administratively suspended by KDOR solely because he refused to take this breath test. See K.S.A. 2008 Supp. 8-1014(a)(1) ("if a person refuses a test, the division . . . shall . . . suspend the person's driving privileges for one year"). So Sloop's suspension, because it is based upon his refusal to take an unauthorized test, is invalid. *Cf.* K.S.A. 2008 Supp. 8-1002(f) (when breath test is requested and results in re-

fusal, if officer fails to meet the statutory certification requirements, the division shall dismiss the administrative proceeding and return any license surrendered by the person); K.S.A. 2008 Supp. 8-1020(k) ("the licensee has the burden of proof by a preponderance of the evidence to show that the facts set out in the officer's certification are false *or insufficient* and that the order suspending or suspending and restricting the licensee's driving privileges should be dismissed." [Emphasis added.]).

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and Sloop's driving privileges are reinstated.