NOT DESIGNATED FOR PUBLICATION

No. 119,656

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GLENN CRAVEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed July 5, 2019.
Affirmed.

*Michael Page Jr.*, of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Glenn Craven appeals the denial of his motion to suppress evidence
resulting in his convictions for driving under the influence (DUI), possessing a firearm
under the influence of alcohol or drugs, and transporting an open container. He argues the
law enforcement officer lacked reasonable suspicion to request he perform a preliminary
breath test (PBT) and probable cause to arrest him. Accordingly, he claims the district
court should have suppressed the evidence supporting his DUI arrest. Upon review of the
record, we disagree with Craven. We affirm.

1

FACTS

In April 2017, Olathe Police Officer John Forcier responded to a call from an AT&T store. The store's employees advised dispatch a man who smelled of alcohol entered the store, acted upset, swore, and caused a scene. The employees observed the man leave the store and get in a silver Toyota Tacoma, and they gave police the license plate number. After Forcier arrived on the scene, he located the vehicle directly in front of the AT&T store.

Forcier observed the vehicle's engine was running and its daytime running lights were on. Forcier found Craven sitting in the driver's seat of the vehicle talking on the phone. Forcier contacted Craven and obtained his driver's license. Forcier returned to his patrol vehicle to run a record's check and to wait for a backup officer. Forcier returned to Craven and requested Craven perform field sobriety tests. Craven, upon questioning, admitted he drank one beer that day. Forcier noted Craven appeared unsteady on his feet when exiting the vehicle as well as appearing slow in walking with officers to an open area a short distance away. Craven informed Forcier he had injured his back several months before and that he had prescription medication for this condition.

Forcier began administering several field sobriety tests. He administered the horizontal-gaze nystagmus test and smelled alcohol. Next, Forcier had Craven perform the walk-and-turn test. Forcier later testified on the walk-and-turn test two or more clues of impairment indicate the person has a blood-alcohol content (BAC) over the legal limit of .08. Craven showed five clues, including loss of balance during the instruction phase, beginning the test too soon, taking an incorrect number of steps, making an improper turn, and failing to touch heel-to-toe on one of his steps. Craven next performed the one-leg-stand test. Two clues of impairment on this test indicate a BAC over the legal limit. Craven exhibited one clue of impairment: swaying while performing the test.

Next, because Craven mentioned taking pain medication, Forcier had Craven perform the "Romberg" test, which tests for drug impairment. The Romberg test does not entail validated clues for alcohol impairment and it is not a standard field sobriety test. Forcier observed Craven swaying and tremors in his eyelids, which are possible indications of drug use.

Based upon the totality of these circumstances, Forcier determined Craven was impaired and should not be driving. Forcier asked Craven to submit to a PBT, but Craven refused. At this point, Forcier arrested Craven. Craven's BAC breath test at the police station registered .144. After Craven's arrest, officers searched his vehicle and found a loaded handgun in the door pocket and an open container of beer. The State charged Craven with DUI, possession of a firearm while under the influence of alcohol or drugs, and transporting an open container.

Craven filed a motion to suppress the evidence gathered following his arrest; however, the motion is not included in the record on appeal. The district court held hearings on the motion on November 2, 2017, and January 3, 2018. Forcier testified and the State played the video from Forcier's in-car camera. The video is not included in the record on appeal. The district court found Forcier's personal observations and the results of the field sobriety tests provided reasonable suspicion to request the PBT and probable cause to arrest Craven. The district court denied the motion to suppress.

At a bench trial based on stipulated facts, the district court found Craven guilty on all counts.

ANALYSIS

On appeal, Craven argues Forcier lacked reasonable suspicion to believe he was or had been attempting to operate his vehicle under the influence of alcohol or drugs.

3

Because the district court found otherwise in denying his motion to suppress, Craven asserts this was error.

The standard of review for a district court's decision on a motion to suppress has two parts. First, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. Next, the appellate court reviews the district court's ultimate legal conclusion under a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Whether reasonable suspicion exists is a question of law to which the appellate court applies the same standard of review. *City of Wichita v. Molitor*, 301 Kan. 251, 264-65, 341 P.3d 1275 (2015). Substantial competent evidence is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved. *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009).

If a law enforcement officer has reasonable suspicion to believe a person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs, the officer may request the person submit to a PBT. K.S.A. 2018 Supp. 8-1012(b). Whether the officer has the statutorily required reasonable suspicion to request a PBT is determined by examining the totality of the circumstances which existed at the time of the request. The driver's performance on field sobriety tests occurring before the PBT must be included in the officer's totality of circumstances examination. *Molitor*, 301 Kan. at 265. In exercising the totality of circumstances test for reasonable suspicion, an appellate court should not assess each factor or piece of evidence in isolation. The court must fully integrate potential exculpatory evidence into its totality of the circumstances calculus. 301 Kan. at 265-66.

The district court denied the motion to suppress because Forcier had reasonable suspicion to request the PBT and probable cause to arrest Craven. The district court found Craven had either driven or was attempting to drive his vehicle because the engine

4

was running, the running lights were on, and Craven was the only one in the vehicle. The district court noted AT&T employees reported Craven smelled of alcohol while in their store and they called police because they believed he was intoxicated. Additionally, the district court mentioned Craven admitted he had a beer and was "slow and unsteady." Regarding the field sobriety tests, the district court referenced the police video and Forcier's testimony, finding Craven lacked balance and he showed five of eight clues of intoxication during the walk-and-turn test. The court also found Craven showed one clue for intoxication from the one-leg-stand—Craven swayed during the test.

Craven argues the district court ignored exculpatory evidence when it denied his motion to suppress, thereby violating the rule set forth in *Molitor* which requires integration of both inculpatory and exculpatory evidence in the totality of the circumstances calculations. See 301 Kan. at 265-66. Craven supports this argument by stating he "submitted to three field sobriety tests, performing satisfactorily on two of the three tests." Additionally, he says the totality of the circumstances required the district court to consider his recent back surgery and no witnesses having testified to actually witnessing his unsafe operation of the vehicle. This forms the basis of Craven's argument on appeal, and it raises the question of whether the district court overlooked or gave inadequate consideration to evidence Craven believes to be exculpatory. However, when factored into a totality of the circumstances analysis, this evidence does not change the outcome of Craven's motion being denied.

Our Supreme Court recognizes field sobriety tests as providing an objective analysis of whether a driver's blood alcohol content is over the legal limit, and viewing results of these tests in conjunction with an officer's subjective observations provides the basis for a totality of the circumstances evaluation. See *Molitor*, 301 Kan. at 266-68. After smelling alcohol on Craven, Forcier administered three additional tests to Craven— the walk-and-turn test, one-leg-stand test, and the Romberg test. Forcier noted five out of eight clues of impairment on the walk-and-turn test which, based on his training,

indicated an impairment over the legal limit. On the one-leg-stand-test, Craven exhibited one of four clues. The Romberg test is used to test for drug impairment and is not a standard field sobriety test. In applying this test, Forcier did not look for validated clues of impairment but rather applied it because Craven mentioned having a prescription for medication following recent back surgery.

Although Craven on appeal asserts he performed satisfactorily on two of three field sobriety tests, realistically, only two of the tests were for alcohol impairment. The Romberg test was not used to assess Craven's alcohol use. This leaves the walk-and-turn test and one-leg-stand test as objective assessments of his alcohol impairment level, and Forcier testified to viewing these tests in totality with one another to evaluate Craven's possible impairment. The tests themselves are not evaluated using a pass or fail standard but rather are looked at to establish validated clues of impairment. Even conceding Craven performed satisfactorily on the one-leg-stand test, he still exhibited fives clues of impairment on the walk-and-turn test, and no single test's results should be viewed in isolation. See 301 Kan. at 265-66. The record reflects both Forcier and the district court took the results of all the tests into account in their totality of the circumstances analysis as required by *Molitor*. See 301 Kan. at 265.

Contrary to Craven's claims, Forcier possessed sufficient information prior to the field sobriety tests indicating Craven had operated or was about to operate his vehicle while under the influence of drugs or alcohol. Employees at the AT&T store reported Craven smelled of alcohol and caused a scene. When Forcier arrived at the store to investigate, he linked the vehicle matching the employees' description in the parking lot with Craven in the driver's seat. The engine was running and the daytime running lights were on. During the initial part of their encounter, Craven told Forcier he had one beer. Viewing these prior events in conjunction with the results of the field sobriety tests results in both subjective and objective observations Craven was impaired. See 301 Kan. at 266-68.

The other two potentially exculpable factors mentioned by Craven on appeal—his recent back surgery and lack of any witness testimony of unsafe operation of his vehicle—do not change the totality of circumstances calculation. Craven's brief provides no elaboration of how or why these assertions would defeat Forcier's observations and the district court's findings.

Craven's recent back surgery and prescription for medication were taken into account by Forcier when he administered the Romberg test. The Romberg test is for drug impairment, not alcohol impairment. Forcier administered it looking for clues of drug impairment. At the point he applied the Romberg test, Forcier testified to taking into account the odor of alcohol, admission of drinking alcohol, possible use of prescription medication, five of eight clues on the walk-and-turn test and one of four clues on the one-leg-stand test. The totality of the other clues formed the basis to arrest Craven.

Craven also asserts the fact no witnesses testified to seeing him unsafely operate his vehicle. This assertion lacks relevance. Forcier only needed reasonable suspicion to believe Craven attempted to operate his vehicle while under the influence to request the PBT. See K.S.A. 2018 Supp. 8-1012(b). Forcier's observation Craven was sitting in the driver's seat in his vehicle with the engine running and daytime running lights on was sufficient to constitute attempting to operate the vehicle. A second witness would be unnecessary. Circumstantial evidence supports the fact he had been and was about to operate his vehicle. Even the gravest of crimes can be supported by circumstantial evidence. *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016).

To arrest a person for driving while intoxicated, an officer must possess probable cause. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). Probable cause means a reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. 296 Kan. at 20. To form probable cause, Forcier was not required to establish guilt beyond a reasonable doubt or even prove guilt is more

probable than not. 296 Kan. at 20. It is sufficient if the information leads a reasonable officer to believe guilt is more than a possibility. 296 Kan. at 20. Based on Forcier's observations, he had both reasonable suspicion and probable cause to believe Craven was about to commit a crime by operating or attempting to operate his vehicle while intoxicated. Given the totality of the circumstances, the district court did not err in denying the motion to suppress.

Affirmed.