NOT DESIGNATED FOR PUBLICATION

No. 122,564

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KARISSA ANDERSON,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Opinion filed January 29, 2021. Affirmed.

*Chris Biggs*, of Knopp and Biggs, P.A., of Manhattan, for appellant.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

PER CURIAM: This appeal arises from the one-year suspension of Karissa Anderson's driving privileges. Anderson sought judicial review of her suspension. At the conclusion of the trial the district court affirmed Anderson's suspension, and this appeal followed.

The testimony at the trial before the district court came from Anderson and Officer Stacy Pettis of the Kansas State University Police Department. That testimony, viewed in the light favoring the Kansas Department of Revenue, the prevailing party below, established the following.

1

In the early morning hours of Sunday, October 21, 2018, and shortly after the bars closed in Aggieville in Manhattan, Officer Andrew Koharchik of the Kansas State University Police Department stopped Anderson, who was driving without her headlights on, contrary to K.S.A. 2018 Supp. 8-1703(a)(1). Koharchik noted a faint odor of alcohol coming from Anderson's car. Anderson admitted that she had been drinking earlier that evening. Officer Pettis soon arrived at the scene to assist, and Koharchik filled her in on what had transpired before Pettis arrived.

Pettis noticed that Anderson's eyes were bloodshot and watery. Pettis had Anderson perform field sobriety tests, which yielded several signs of impairment. Anderson refused a preliminary breath test. Once this investigation at the scene was complete, rather than sending Anderson on her way, Pettis arrested Anderson on suspicion of driving under the influence of alcohol and transported her to the police station. She did so because she was concerned that Anderson "was possibly too impaired by alcohol to be permitted to safely operate a vehicle."

At the police station, after being read her *Miranda* rights, Anderson admitted to Pettis that she had consumed two beers, one shot of whisky, and one shot of vodka at one of the Aggieville bars earlier that night. Pettis provided Anderson with a copy of the form DC-70 implied consent advisories and read the advisories to Anderson. She then asked Anderson to submit to a breathalyzer test. Anderson refused. Pettis then served Anderson with a form DC-27 certification notifying her that her driving privileges would be suspended for one year.

Anderson requested an administrative hearing. Anderson testified at the hearing that her test refusal was involuntary because she was confused by the DC-70 implied consent advisory regarding the potential consequences of refusing an evidentiary breath test. She thought the consequence would be a license suspension for 30 days, not for one

year. Evidence was also presented regarding the traffic stop and the officers' observations at the scene. The administrative hearing officer affirmed Anderson's license suspension.

Anderson petitioned for judicial review. In that action, she had the burden of proving that the decision of the Kansas Department of Revenue suspending her license should be set aside. K.S.A. 2018 Supp. 8-1020(q). Following a de novo trial in the district court, the court affirmed the administrative order suspending Anderson's license. Anderson's appeal from that ruling brings the matter to us.

On appeal Anderson raises three issues: (1) whether there was sufficient evidence to justify her arrest and the request that she submit to an evidentiary breath test; (2) whether the DC-70 consent advisory was misleading by misstating the statutory provisions relating to drivers' license suspensions; and (3) whether Anderson's refusal to submit to an evidentiary breath test was voluntary.

*The Sufficiency of the Evidence to Support Anderson's Arrest and the Request that She Submit to an Evidentiary Breath Test*

Anderson claims there was insufficient evidence to establish that Pettis had probable cause to arrest her for suspicion of DUI or to subsequently request an evidentiary breath test. In considering this claim, we examine the record to see if there is substantial evidence to support the district court's factual findings. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). As stated in *Casper*, another driver's license suspension case:

> "'In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" 309 Kan. at 1220.

3

Thus, we do not reweigh the evidence before the district court, resolve evidentiary conflicts that arose during the trial, or make our own determinations of the credibility of any of the witnesses. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Those were all matters to be resolved by the fact-finder at the district court's trial.

We then must independently determine whether the facts established at trial constitute legally sufficient grounds to support Officer Pettis' action in arresting Anderson and requesting that she submit to an evidentiary breath test. See *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 436-37, 472 P.3d 92 (2020), *petition for rev. filed* August 17, 2020.

*Anderson's Arrest*

Anderson was initially stopped for a traffic infraction that Officer Koharchik observed: driving at night without her headlights on, contrary to K.S.A. 2018 Supp. 8-1703(a)(1). When Officer Pettis arrested Anderson, it was not for the traffic infraction that justified the stop, but rather based on the circumstances thereafter that led Officer Pettis to reasonably believe that Anderson had been driving while under the influence of alcohol. See *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514-15, 242 P.3d 1179 (2010).

At the police station, the DC-27 form certifying Anderson's license suspension was prepared by Officers Koharchik and Pettis. Koharchik checked the box on the form indicating that the traffic stop was for the traffic violation of "driving without headlights." Koharchik and Pettis checked the boxes indicating that they had "reasonable grounds/probable cause" to believe Anderson was under the influence of drugs based on "odor of alcoholic beverages; . . . sobriety tests indicated impairment; . . . refused sobriety tests; . . . bloodshot eyes; . . . poor balance and coordination; . . .person stated alcohol/drugs consumed; [and] refused preliminary breath test." At trial, Officer Pettis

4

testified as described earlier in this opinion. That testimony provided probable cause for arresting Anderson.

Anderson relies on a Kansas Supreme Court case and two unpublished cases from the Kansas Court of Appeals to challenge the legal conclusion that there was probable cause to arrest her. But because of important factual distinctions between these cases and the one now before us, they do not undermine the district court's conclusion that Officer Pettis had probable cause to arrest Anderson.

In *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 17, 290 P.3d 555 (2012), the Kansas Supreme Court found there was no probable cause to arrest the driver for DUI, and thus the arresting officer had no statutory authority to request an evidentiary breath test. The arresting officer in *Sloop* made a traffic stop late at night for a minor traffic infraction, smelled the odor of alcohol coming from the car, and observed the driver's bloodshot and watery eyes. The driver admitted he had been drinking, but his speech was not slurred and he did not have a problem standing. But unlike the facts now before us, the officer in *Sloop* did not perform any valid field sobriety tests to support the arrest.

The facts in *Taylor v. Kansas Dept. of Revenue*, No. 114,851, 2016 WL 4259920 (Kan. App. 2016) (unpublished opinion), are completely distinguishable from those before us today. There, the officers arrived at the scene of a single-car accident. On approaching the vehicle they smelled a strong odor of alcohol. Inside the car they discovered a number of beer cans, all but one of which apparently had burst from the impact of the crash. The court found that the only evidence that warranted a request for a blood test was the accident and the fact that the driver smelled of alcohol. The officers had no way of knowing what caused the accident as there was inclement weather that day. Moreover, the strong odor of alcohol could have come from the exploding beer cans. The court stated it takes more than the smell of alcohol to create reasonable grounds to

5

believe the driver was under the influence of alcohol so as to justify asking for a blood-alcohol test. 2016 WL 4259920, at *3.

Finally, *City of Junction City v. Franklin*, No. 121,120, 2020 WL 855471 (Kan. App. 2020) (unpublished opinion), turned on a field test completely inconsistent with the standard field tests administered to Anderson in our present case. In *Franklin*, the arresting officer stopped the defendant late at night for a minor traffic infraction. He noted an odor of alcohol coming from the car and Franklin's bloodshot and watery eyes. Franklin admitted that he had been drinking, but his speech was not slurred. Unlike in our present case, the arresting officer had Franklin perform various nonstandard field sobriety tests—which Franklin passed—rather than the standard field sobriety tests. The officer also administered the horizontal gaze nystagmus (HGN) test—which Franklin failed—indicating signs of impairment to the arresting officer. (The HGN test was characterized by our Supreme Court in *City of Wichita v. Molitor*, 301 Kan. 251, 263, 341 P.3d 1275 (2015), as being akin to a Ouija Board or a Magic 8 Ball.) When Franklin refused to submit to a preliminary breath test, he was arrested on suspicion of DUI. Franklin was charged with DUI and possession of a firearm while under the influence of alcohol. At the hearing on Franklin's suppression motion, the City failed to present any evidence supporting the scientific reliability of the HGN test as required by *Molitor*. Accordingly, the district court rejected the HGN test results. The court found that the officer's reliance on the HGN test results "tainted" everything that happened thereafter, including Franklin's arrest, and the officer's earlier observations of Franklin, standing alone, which did not include any standard field sobriety test results, were insufficient to justify the arrest. This court affirmed. *Franklin*, 2020 WL 855471, at *2-4.

The facts in these cases cited by Anderson are distinguishable from those now before us. They do not undermine our conclusion that Officer Pettis had probable cause to arrest Anderson on suspicion of driving under the influence of alcohol. Anderson failed to meet her burden under K.S.A. 2018 Supp. 8-1020(q) to prove that the decision

6

to suspend her driving privileges should be set aside because her arrest was not based on probable cause.

*The Request that Anderson Submit to an Evidentiary Breath Test*

Under K.S.A. 2018 Supp. 8-1001(b)(1) and (c), a law enforcement officer may require a motorist to submit to an evidentiary test to determine the presence of alcohol if at the time of the request:  (1) the officer had probable cause to believe that the motorist was driving under the influence of alcohol, (2) the motorist had been arrested or taken into custody for a violation of any state or local law, and (3) the officer provided the motorist with the required oral and written implied consent advisories. See K.S.A. 2018 Supp. 8-1002(a).

If the officer asks the motorist to submit to an evidentiary breath test after meeting the requirements in K.S.A. 2018 Supp. 8-1001(b)(1) and (c) and the motorist refuses, K.S.A. 2018 Supp. 8-1002(a)(1) and (f) mandate that the refusing motorist's driving privileges be suspended.

As discussed earlier in this opinion, there was probable cause for Officer Pettis to believe that Anderson was driving under the influence of alcohol, Pettis arrested Anderson based upon that belief, and Pettis supplied Anderson with the DC-70 implied consent advisories and read them to her. When Anderson refused to submit to an evidentiary breath test, the law required that her driving privileges be suspended. Anderson failed to meet her burden under K.S.A. 2018 Supp. 8-1020(q) of proving that the suspension of her driving privileges should be set aside based on the contention that there was no legal basis for Officer Pettis to ask her to submit to an evidentiary breath test.

7

*The Accuracy of the DC-70 Consent Advisory Form*

To excuse herself from refusing to submit to an evidentiary breath test, Anderson argues that the DC-70 warning given under K.S.A. 2018 Supp. 8-1001(c)(2) is confusing and misstates the law. This claim raises an issue of law over which we have unlimited review. *Sloop*, 296 Kan. at 17.

Anderson contends that the wording of the DC-70 notice was confusing because it led her to believe that a test refusal would only result in a 30-day suspension when in fact it resulted in a 1-year suspension. In other words, she was willing to have her license suspended for 30 days for refusing to take the evidentiary breath test but not for 1 year.

Anderson's criticism is directed at the following statement in the DC-70: "If you refuse to submit to and complete the test or tests, or if you fail a test, your driving privileges will be suspended for a period of at least 30 days and up to one year." This advisory tracks the language of K.S.A. 2018 Supp. 8-1001(c)(2): "[I]f the person refuses to submit to and complete the test or tests, or if the person fails a test, the person's driving privileges will be suspended for a period of at least 30 days and up to one year."

Anderson argues that this DC-70 advisory, taken from K.S.A. 2018 Supp. 8-1001(c)(2), does not comport with the actual relevant statutory penalties listed in K.S.A. 2018 Supp. 8-1014(a)—1-year suspension for a first-time test refusal—and K.S.A. 2018 Supp. 8-1014(b)—30-day suspension for a first-time test failure.

But K.S.A. 2018 Supp. 8-1001(m) states: "It shall not be a defense that the person did not understand the written or oral notice required by this section." What's more, the notice could not reasonably be read to confine the 30-day suspension to test failures and the 1-year suspension to test refusals. The notice provided a range of possible

consequences that covered test failures and test refusals. It was consistent with K.S.A. 2018 Supp. 8-1014 and did not misstate the law.

Finally, Anderson points to the legislative change adopted effective July 1, 2019. The Legislature changed the wording of K.S.A. 2018 Supp. 8-1001(c) to explicitly state that a person's refusal will result in a 1-year suspension and a test failure will result in either a 30-day or a 1-year suspension. K.S.A. 2019 Supp. 8-1001(c)(2) and (3). While this legislative change provided a more explicit statement of the consequences of a test refusal versus a test failure over the prior iteration of the statute which applies here, the 2018 version of the statute and the DC-70 advisories issued in accordance with it did not misstate the law so as to excuse Anderson's decision not to submit to an evidentiary breath test.

*The Voluntariness of Anderson's Test Refusal*

Anderson's final point is tied to the issue we just addressed. Anderson contends that her refusal to submit to an evidentiary breath test was because the DC-70 implied consent advisory based on K.S.A. 2018 Supp. 8-1001(c)(2) misstated the law and was confusing. Thus, her test refusal was not voluntary. Again, this raises an issue of law over which we have unlimited review. *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 456, 471 P.3d 700 (2020).

Anderson relies on *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016). We are not persuaded that *Ryce* applies. *Ryce* involved a traffic stop that led to a DUI arrest. Under our implied consent law, a motorist in Kansas impliedly consents to alcohol or drug testing. A motorist can revoke that implied consent. After Ryce's arrest he was transported to jail where he was provided the DC-70 advisories consistent with K.S.A. 2014 Supp. 8-1001(k)—an earlier iteration of the statute now before us in Anderson's case. The DC-70 in use at the time informed Ryce that refusing an evidentiary breath test

9

could result in criminal charges under K.S.A. 2014 Supp. 8-1025. (Criminal charges for a test refusal was not a possibility in Anderson's case.) Ryce refused an evidentiary breath test and was criminally prosecuted for doing so. Our Supreme Court held that a motorist has a constitutional right to withdraw consent to a search of the motorist's blood or breath, and a motorist who withdraws consent cannot be punished criminally for exercising this right. 303 Kan. at 902.

In Anderson's case she withdrew the implied consent to testing recognized in K.S.A. 2018 Supp. 8-1001(a) and was not criminally prosecuted for it. Anderson cites the *Ryce* court's declaration that consent to a search cannot "be coerced, by explicit or implicit means, by implied threat or covert force." 303 Kan. 899, Syl. ¶ 6. In Anderson's case the issue is the withdrawal of her implied consent. As discussed earlier, that withdrawal was not coerced. Anderson was given the choice to consent to a breath test or to refuse it. She chose to refuse the test after being informed of the range of administrative sanctions that could result. Anderson's voluntariness argument turns on whether K.S.A. 2018 Supp. 8-1001(c)(2) is invalid. We have concluded that it is not.

Affirmed.