NOT DESIGNATED FOR PUBLICATION

No. 122,527

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES WARNER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed April 9, 2021. Affirmed.

*James C. Heathman*, of Heathman Law Office PA, of Topeka, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellee.

Before ATCHESON, P.J., GARDNER and WARNER, JJ.

PER CURIAM: James Warner appeals the administrative suspension of his driver's license. He argues the suspension was improper because the evidence did not show he operated a vehicle while under the influence of alcohol. We conclude the district court's findings were supported by substantial competent evidence and affirm the suspension of Warner's driving privileges.

FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to the suspension of Warner's license took place on Sunday, December 23, 2018, when two Topeka police officers responded to a possible hit-and-run

1

accident in the parking lot of a bar. An Uber driver reported to the officers that while he was dropping off his passengers at the bar, a red truck backed into his van. The passengers confirmed this sequence of events.

The Uber driver told the officers that he asked the driver of the truck—later identified as Warner—to exchange insurance information because he did not want Warner to get in trouble for driving under the influence of alcohol. According to the Uber driver, Warner became angry and denied hitting the van; he told the Uber driver he did not see any damage on either vehicle and did not want the incident reported to his insurance company. The Uber driver then told Warner that he would call the police if Warner did not cooperate. At that point, Warner got back in his truck and drove away. The Uber driver took down Warner's license-plate number and then called the police.

Neither the Uber driver nor his passengers relayed any information to the officers about Warner being visibly intoxicated—other than the Uber driver's statement that he told Warner that he did not want him to get in trouble for driving under the influence of alcohol. But each provided a physical description. The officers also interviewed the bartender at the bar. She knew Warner because he was a regular customer and told them that Warner had been in the bar and had a beer there.

The officers looked up the license-plate information provided by the Uber driver and determined the truck was owned by Warner and his wife. They then headed to Warner's house, arriving about 30 minutes after the accident was reported. The truck parked in Warner's driveway matched the Uber driver's description; though the rear bumper did not have any paint transfer or visible damage, it appeared to have been recently wiped down. When the officers knocked on Warner's door, his wife answered and told them that the truck belonged to her husband. She informed the officers that Warner was not home and that she did not know if he had been driving.

Eventually, Warner—who matched the physical description provided by the witnesses—came out of the house. The officers told him they were investigating a hit-and-run accident. Warner became angry and asked them "how [they] had got to his house" and "how [they] knew it was his vehicle." The officers explained that the Uber driver had taken down his license-plate number. The officers noticed that Warner smelled strongly of alcohol, was slurring his words, and was struggling to stand upright. Warner denied any involvement in an accident that evening. He claimed he had not been driving near the bar and had just gotten off work.

As the officers asked him questions, Warner became more agitated. Because Warner was uncooperative and refused to take his hands out of his pockets, the officers placed him in handcuffs for their safety and performed a pat-down search. Warner then asked the officers "what would [they] have done to him if when [they] arrived he started shooting at [them]." Due to Warner's actions and overall condition, the officers placed him in their patrol car and did not conduct any field sobriety tests. After Warner refused to take a breath test, the officers arrested him for driving under the influence, leaving the scene of an accident, and failing to provide information.

As a result of these events, the Kansas Department of Revenue suspended Warner's driver's license. Warner requested an administrative hearing, during which he raised several issues relating to the officers' findings and the nature of the evidence. The hearing officer upheld the suspension, and Warner filed a petition for judicial review by the district court.

During the subsequent trial, both investigating officers testified regarding this sequence of events and their observations. Warner also testified, explaining that he was coming home from work at the Topeka Housing Authority and briefly stopped at the bar to bet with friends on a Kansas City Chiefs game. Warner claimed he had one beer at the bar and then headed home. Although he conceded that he had an interaction with the

3

Uber driver, he maintained that his truck never hit the van and said that the Uber driver was trying to take advantage of him. Warner stated that he refused to exchange insurance information and drove away from the bar, going first to his son's house and then home. Warner said he started drinking and getting ready for the football game when he got home, and then the officers arrived.

Warner's version of events revolved around the incident occurring after work on a Thursday, but the evidence showed that it was in fact Sunday. When confronted with the fact that he could not have been at work because it was Sunday, Warner stated that he could not remember what he had been doing before the accident but insisted that he only had one beer at the bar. Warner also acknowledged in his testimony that he had been ordered by the Topeka Municipal Court to pay $1,700 to repair the damage to the Uber driver's van.

The district court took the matter under advisement and later issued a written decision affirming the suspension of Warner's license. The court noted that the smell of alcohol, Warner's slurred speech and poor balance, his involvement in a hit-and-run, and the statements of the Uber driver and his passengers all supported the officers' conclusion that he had been driving while impaired. After considering the credibility of the witnesses and weighing the evidence, the court found the officers had probable cause to believe that Warner had operated a vehicle while under the influence of alcohol.

Warner appeals, challenging the evidentiary basis for the district court's findings. While he acknowledges that he was intoxicated when the officers arrived at his home and admits that he drove home from the bar, Warner argues that there is no credible evidence to show he drove his truck while under the influence of alcohol.

DISCUSSION

K.S.A. 2018 Supp. 8-1567 criminalizes driving a vehicle while under the influence of alcohol or drugs. K.S.A. 2018 Supp. 8-1567(a)(3)-(5). A violation of this statute may be followed by criminal charges, but it also has administrative consequences relating to a person's driver's license. When Warner was arrested in December 2018, Kansas law stated that if a person refused to submit to an evidentiary breath test—administered after an officer had probable cause to believe that person had been driving under the influence of alcohol or drugs—his or her driver's license would "be suspended for . . . up to one year." K.S.A. 2018 Supp. 8-1001(c)(2). If a driver failed an evidentiary breath test, his or her "driving privileges [would] be suspended for a period of at least 30 days and up to one year." K.S.A. 2018 Supp. 8-1001(c)(2).

An appeal from the administrative suspension of a driver's license under these provisions is a civil case brought under the Kansas Judicial Review Act. See *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516, 213 P.3d 1061 (2009). Appellate courts reviewing license suspensions employ a mixed standard of review, depending on the questions presented. We review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 466, 447 P.3d 959 (2019). Substantial competent evidence is relevant and substantive evidence that furnishes a sufficient basis of fact to reasonably resolve the issues in the case. In evaluating whether such evidence existed before the district court, we do not reevaluate the credibility of witnesses, redetermine questions of fact, or reweigh conflicting evidence. 310 Kan. at 469. Instead, we "'must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1220, 442 P.3d 1038 (2019).

Unlike a criminal case where the State must prove the elements of a crime beyond a reasonable doubt, Warner bore the burden before the administrative hearing officer and the district court—as he does before this court—to prove there was not probable cause to believe that he had been driving while under the influence of alcohol. See K.S.A. 2018 Supp. 8-1020(k). Neither the hearing officer nor the district court found he had met this burden. Instead, both found that numerous undisputed facts, and the inferences drawn from the officers' observations and the witnesses' statements, supported the officers' actions. We agree.

On appeal, Warner emphasizes that neither of the officers observed him driving, and none of the witnesses—neither the Uber driver nor his passengers—offered any opinion as to whether Warner seemed intoxicated when he drove away. Both statements are true. But there is other evidence in the record to support the district court's findings. For example, though the Uber driver did not specifically inform the officers that Warner was intoxicated at the time of the accident, he nevertheless informed the officers that he had offered to exchange insurance information because he did not want Warner to "get in trouble for driving while intoxicated." The officers were aware that Warner had at least one beer inside the bar, had hit a parked car in the parking lot, and had acted irrationally (indeed, had driven off) when the Uber driver said he was going to call the police to report the accident.

The officers' later encounters with Warner and his wife also undermine Warner's claimed explanation. When the officers arrived at Warner's home, Warner's wife attempted a diversion, telling them Warner was not at home and that she did not know whether Warner had been driving. When Warner exposed her false statements by coming out of the house, he showed several clues of impairment—he smelled of alcohol, slurred his speech, had poor balance, and was belligerent with the officers. All of this occurred within about 30 minutes of the accident.

6

We acknowledge that Warner's explanations of the day's events varied from these accounts. But contrary to his arguments on appeal, the fact that the district court did not believe Warner's description of the events does not render that court's decision arbitrary or capricious. Rather, our review of the record shows that the district court carefully considered the witnesses' testimony and the facts before it. We note that Warner's explanation changed over the course of these proceedings, from saying he had never even driven past the bar (when the officers met him after the accident), to saying he had gone to the bar and had one beer, to saying he left the bar and went to his son's house before returning home. The district court also expressly found that the officers had provided credible testimony. It is not the role of this court to second-guess credibility assessments when we were not present to observe the witnesses' testimony or demeanor.

Based on its findings, which are supported by substantial competent evidence in the record, the district court ruled that the officers reasonably concluded that they had probable cause to believe Warner had driven his car under the influence of alcohol. See *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012) (Probable cause exists when an officer has a "'reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime.'"). After reviewing the totality of the circumstances in light of the court's factual findings, we find no error in this analysis. Like the district court, we affirm the suspension of Warner's driver's license.

Affirmed.