IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,550

STATE OF KANSAS,
*Appellee*,

v.

GREGORY VINCENT KEENAN,
*Appellant*.


SYLLABUS BY THE COURT


1.

Supreme Court Rule 8.03(h)(1) (2015 Kan. Ct. R. Annot. 81) states that "issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals." When the State does not cross-petition to challenge a Court of Appeals' preservation ruling in favor of a defendant, the Supreme Court will not consider whether the panel erred on this point.


2.

Officers had probable cause to arrest the defendant for driving under the influence, when detailed information about the defendant's condition and behavior from an identified informant was corroborated by the officers' direct, personal observations.

3.

Admission of evidence gathered after an allegedly unlawful warrantless entry into the defendant's home does not warrant reversal of the defendant's convictions because the

1

court is convinced that, even if there was error, it was harmless beyond a reasonable doubt.

Review of the judgment of the Court of Appeals in 50 Kan. App. 2d 358, 325 P.3d 1192 (2014). Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed August 19, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Courtney T. Henderson*, of Billam & Henderson, LLC, of Olathe, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Gregory Vincent Keenan challenges the denial of his motion to suppress evidence obtained when officers entered his home without a search warrant.

The district court judge denied Keenan's motion based on what he described as the existence of reasonable suspicion to conduct an investigation of drunk driving and exigent circumstances. The Court of Appeals affirmed the denial, holding that probable cause to arrest Keenan for violation of a protection from abuse order (PFA) and for drunk driving existed before the officers entered the house and that exigent circumstances—the possible loss, destruction, or concealment of evidence and the doctrine of hot pursuit— supported the warrantless entry. *State v. Keenan*, 50 Kan. App. 2d 358, 365, 371-73, 325 P.3d 1192 (2014).

We also affirm the district judge's decision, although our reasoning for doing so differs somewhat from that of the district judge and the Court of Appeals panel. We agree

2

with the Court of Appeals that, based on the undisputed facts before the district court at the time of the suppression hearing, the officers had probable cause to arrest Keenan for driving under the influence before they entered his home. In addition, even if the Fourth Amendment to the United States Constitution should have prevented the officers from following Keenan into his home to effect the arrest, any evidence gathered and admitted at trial as a result of the entry was superfluous; it would not have affected the ultimate outcome in Keenan's case. See *State v. Thomas*, 302 Kan. 440, 451, 353 P.3d 1134 (2015) (court need not determine whether un-*Mirandized* statements could be used in search warrant affidavit when affidavit already contained evidence sufficient to support finding of probable cause). In other words, even if there was error, an issue we do not decide today, the error was not reversible.

FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2010, Julie Hynes agreed to babysit her 4-year-old grandson overnight. About 11 p.m., Keenan, the boy's father, unexpectedly came into Hynes' residence. He was acting "bizarre," according to Hynes—speaking nonsensically, slurring his speech, stumbling, and swaying. He also smelled of alcohol. He picked up the sleeping boy and stumbled while carrying him out to his vehicle. It was sleeting outside, and Hynes was concerned about the weather. She thought Keenan was returning the boy to her daughter's residence a couple of blocks away; but Keenan said he was going home to Lenexa. When Keenan drove away, Hynes called Platte County, Missouri, law enforcement and was subsequently connected with the Lenexa Police Department.

Lenexa Police Officer Betsy Madl was dispatched to Keenan's residence, based on a call that he was driving while intoxicated with his 4-year-old son in the car. Dispatch also advised her that a complaint had been made earlier that day about Keenan's alleged violation of a PFA order. Madl parked in front of Keenan's home and observed a vehicle matching the description she had been given drive up the road and pull into Keenan's

3

driveway. Madl did not observe any signs of driver impairment while watching the vehicle. Keenan then got out of the vehicle and retrieved his son. Madl approached and asked if she could speak with Keenan. Keenan asked if he could take his son inside. Madl smelled a strong odor of alcohol on Keenan, and she saw him stumble while carrying the boy toward the home.

Officer Jason Hinkle arrived at Keenan's home and observed Madl speaking with Keenan. Hinkle heard Keenan ask if he could go inside to put his son down, and the officers allowed him to do so. Hinkle asked for permission to follow Keenan into the house, but Keenan said, "No." The officers followed Keenan inside anyway.

At a later preliminary hearing, Hinkle would provide two reasons for entering the home despite Keenan's refusal of permission. First, Hinkle believed that exigent circumstances existed because Keenan could destroy or manipulate the evidence, *i.e.*, the amount of alcohol in his body. Second, while en route to the residence, Hinkle had been told that Keenan had violated a protection order involving another party. Hinkle had read about three-quarters of a report on that issue before arriving at Keenan's residence, and he believed there to be probable cause to arrest Keenan for violation of the order.

The officers followed Keenan down a hallway inside the home and observed him stumble again on his way to a bedroom where he lay his son down. Keenan was speaking on his phone, and he ignored multiple requests from the officers to hang up. The officers observed that Keenan had slurred speech and bloodshot eyes, and they smelled an overwhelming odor of alcohol. Keenan stumbled several more times and had difficulty communicating. He refused to perform field sobriety tests, and he was placed under arrest for DUI.

4

Hinkle offered Keenan an opportunity to make arrangements for his son, and Keenan went into the kitchen to plug in his cell phone. Hinkle told Keenan to stay out of the kitchen because a 12-inch butcher knife was on the counter. Keenan told them to stop being paranoid and continued on. Hinkle grabbed Keenan by the collar, and Keenan stated: "'I'm fucking Jersey, baby. I've taken care of more cops than you'll know.'" Keenan was then handcuffed. He refused to take a breath test. A subsequent search of his vehicle revealed a half-empty bottle of whiskey, a bottle cap, and full bottles of beer. Later that evening, officers learned that the PFA order was no longer valid.

Keenan was charged with felony DUI as a three-time offender, refusing a preliminary breath test, and transporting an open container. He was bound over after the preliminary hearing, in which Hynes and the officers testified. He pleaded not guilty to all three charges.

Keenan then filed his motion to suppress. The motion is not in the record on appeal. The State's written response and oral argument at the hearing on the motion asserted that exigent circumstances justified the officers' entry into Keenan's home and that officers needed to ensure as part of their DUI investigation that Keenan did not drink alcohol once inside. The State also argued that *Miranda* warnings were unnecessary because the officers' questions were part of an investigatory interrogation and that the officers had probable cause to arrest Keenan for DUI because of their observations of his impairment. The defense argued that, even if Hinkle believed he had probable cause to arrest Keenan for a violation of the PFA order, a warrant would be necessary to make such an arrest in a residence, absent exigent circumstances. The defense attempted to discount the significance of the officers' reliance on their DUI investigation, saying that the officers had "absolutely zero instances with any kind of DUI issues until they got in the house." The State disagreed, pointing to Madl's testimony about odor and stumbling before Keenan went inside.

5

At the conclusion of the suppression hearing, the district judge ruled that a recording of the arrest would need to be redacted to eliminate statements obtained from Keenan in violation of his *Miranda* rights. He also ruled:

> "Considering the evidence having been presented and your arguments, it is my finding that the police under exigent circumstances had the duty to enter the home and conduct a DUI investigation, certainly a *reasonable suspicion* to do so. Upon entering the home, more facts were made known which ultimately led to Mr. Keenan's arrest for DUI.
>
> . . . .
>
> "But as to the first part of the argument that the police should not have entered the residence without a search warrant, I overrule that point. I think the police acted appropriately in entering the home at the time that they did." (Emphasis added.)

At a subsequent hearing concerning the planned redaction of the recording, defense counsel said that the district judge previously had made "it clear there was probable cause to go in the house without [a] search warrant." The district judge corrected defense counsel, saying: "Exigent circumstances."

When Keenan's case came to trial, defense counsel objected to the admission of the recording of the officers' encounter with Keenan and of the alcohol bottles found in Keenan's vehicle. Counsel asserted that the bottles were found in an unlawful search of Keenan's vehicle incident to his arrest; that the search of the house was illegal; and that any testimony arising from the unlawful police conduct should be inadmissible. The district judge adhered to the pretrial rulings and admitted the exhibits.

6

Keenan was ultimately convicted of felony DUI and transporting an open container. He also was fined for refusing the preliminary breath test.

When Keenan challenged the district judge's suppression ruling before the Court of Appeals, the panel first ruled that, based on all of the evidence available to the officers, they had more than the mere reasonable suspicion upon which the district judge had relied to rule in the State's favor. The panel held that the officers had probable cause to arrest Keenan, both for violating a PFA and for driving under the influence before they entered Keenan's home. *Keenan*, 50 Kan. App. 2d at 364-66.

The panel next addressed whether either exigent circumstances, specifically, such as the potential for loss, destruction, or concealment of evidence or the doctrine of hot pursuit justified the officers' warrantless entry into Keenan's home. It determined that a violation of a PFA and a DUI were not minor, nonjailable offenses; and thus *Welsh v. Wisconsin*, 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), did not preclude a warrantless entry. 50 Kan. App. 2d at 368.

The panel next rejected Keenan's argument that law enforcement's mere speculation that Keenan would drink additional alcohol, coupled with a lack of a particularized finding of exigent circumstances by the district judge, doomed the State's reliance on *State v. Dugan*, 47 Kan. App. 2d 582, 588-89, 276 P.3d 819 (2012) (probable cause must be coupled with particularized, exigent circumstances to allow warrantless entry of a private residence). 50 Kan. App. 2d at 368-69. The panel listed five factors set out in *Dugan* for evaluation of whether exigent circumstances exist:

> "'(1) The time needed to secure a search warrant; (2) the reasonableness of the officers' belief the evidence may be immediately lost; (3) potential danger to the officers guarding the site while awaiting a warrant; (4) whether those persons with possession of the

7

evidence are aware of the officers' presence; and (5) the ease with which the evidence might be destroyed or hidden.'" 50 Kan. App. 2d at 369 (quoting *Dugan*, 47 Kan. App. 2d at 605 [citing *United States v. Moses*, 540 F.3d 263, 270 [4th Cir. 2008]; *United States v. Vega*, 221 F.3d 789, 800 [5th Cir. 2000]).

In the panel's view, the situation at the threshold of Keenan's home met four of the five factors, all but the third focused on danger to the officers guarding the site while a warrant is obtained. 50 Kan. App. 2d at 369.

The panel then noted that Kansas had little authority on whether the potential for increase or dissipation of alcohol in a suspect's blood constituted exigent circumstances. It also observed that cases from other jurisdictions are split. See 50 Kan. App. 2d at 370 (citing and discussing *People v. Thompson*, 38 Cal. 4th 811, 825, 43 Cal. Rptr. 3d 750, 135 P.3d 3 [2006] [dissipation may constitute exigent circumstance under particular facts]; *People v. Wehmas*, 246 P.3d 642, 644 [Colo. 2010] [dissipation insufficient to show exigency]; *State v. Legg*, 633 N.W.2d 763, 772 [Iowa 2001] [compromise of blood-alcohol evidence establishes exigency]; *City of Kirksville v. Guffey*, 740 S.W.2d 227, 228-29 [Mo. App. 1987], *cert. denied* 485 U.S. 1035 [1988] [permissible for officer to block closing garage door to apprehend DUI suspect in home; need to prevent alteration of blood-alcohol evidence justified entry into suspect's home]); *State v. Larson*, 266 Wis. 2d 236, 251, 668 N.W.2d 338 [Wis. App. 2003] [loss of blood-alcohol evidence not exigency]. In this relative legal vacuum, the panel concluded that the totality of the circumstances in this case demonstrated a potential for loss of evidence that was serious enough to qualify as an exigent circumstance justifying the officers' entry into Keenan's home. 50 Kan. App. 2d at 371.

The panel also sided with the prosecution on the applicability of the doctrine of hot pursuit:

"The officers' contact with Keenan reflects their control of the stop. Although the officers had not arrested Keenan, by Keenan asking permission to enter his own house, Keenan submitted to the officers' authority and control of his movement and recognized he was restricted by their presence.

". . . [T]he officers had two choices—keep Keenan out of his house or allow him to enter the house to put his child to bed. They chose to protect the child's welfare but kept Keenan under their control by following him into the house. Keenan was using his need to put his son to bed as a reason to keep moving toward the house and avoid the officers. The fact Keenan was trying to retreat into his house, particularly in light of his request to put his young son to bed, does not protect him from an arrest that was 'set in motion in a public place.' See [*United States v.*] *Santana*, 427 U.S. [38,] 43, [96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976)].

"Keenan first encountered Madl outside his house, and while the pursuit may not have been the equivalent of an action movie, the United States Supreme Court has still deemed the short trip from the doorway of a house to the interior to qualify as hot pursuit. 427 U.S. at 42-43." 50 Kan. App. 2d at 372-73.

In its ultimate conclusion, the panel cautioned that its decision was narrowly limited to the facts of this case. It said it was "not establishing a bright-line rule to approve the warrantless entry into the house of a driver suspected of being under the influence of alcohol." 50 Kan. App. 2d at 373.

PRESERVATION

The State argued before the Court of Appeals and again before us at oral argument that Keenan has an issue preservation problem on his challenge to the denial of suppression. The State did not cross-petition for review on the preservation issue, even

9

though the Court of Appeals rejected its argument that Keenan's late trial objection was insufficient. 50 Kan. App. 2d at 363.

Supreme Court Rule 8.03(h)(1) (2015 Kan. Ct. R. Annot. 81) states that "issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals." Because the State did not cross-petition to challenge the Court of Appeals' preservation ruling in favor of Keenan, we will not consider whether the panel erred on this point.

SUPPRESSION

"When reviewing a district court's decision on a motion to suppress, we bifurcate our analysis, first assessing whether the factual findings below are supported by substantial competent evidence and then applying a de novo standard to the ultimate legal conclusion to be drawn from those facts." *State v. Aguirre*, 301 Kan. 950, 954-55, 349 P.3d 1245 (2015). The defendant carries the burden of establishing the facts necessary to support his or her suppression motion in the district court. *State v. Estrada-Vital*, 302 Kan. 549, 557, 356 P.3d 1058 (2015). However, the State bears the burden of proving the lawfulness of a search and seizure. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007).

"When it comes to the Fourth Amendment, the home is first among equals. It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *State v. Talkington*, 301 Kan. 453, Syl. ¶ 5, 345 P.3d 258 (2015). "Except in carefully circumscribed situations, law enforcement officers, then, violate the Fourth Amendment if they enter a dwelling without either a search warrant for the premises or an arrest warrant for a resident they reasonably believe will be found there." *Dugan*, 47 Kan. App. 2d at 588 (citing *Welsh,* 466 U.S. at 748-49).

10

"Kansas recognizes various exceptions permitting warrantless entries or searches: consent; search incident to lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances, of which hot pursuit is one example; emergency aid; inventory searches; plain view; and administrative searches of closely regulated businesses." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). And the United States Supreme Court has recognized that *entry* into a house without a warrant can pass muster under the Fourth Amendment when an officer possesses *probable cause* of criminal activity and *exigent circumstances exist*. See *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

We first address the panel's determination that there was probable cause to arrest Keenan by the time he entered his home. This determination does not require a rigid application of factors. *Sloop v. Kansas Dept. of Revenue,* 296 Kan. 13, 20, 290 P.3d 555 (2012). Rather, it looks to the totality of the circumstances, as viewed through the lens of an objectively reasonable police officer. *State v. Ramirez,* 278 Kan. 402, 407, 100 P.3d 94 (2004).

The probable cause necessary to justify a warrantless arrest is

"'a reasonable ground for belief of guilt; and this means less than evidence which would justify condemnation of conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. [Citation omitted.]'" *State v. Fewell,* 286 Kan. 370, 377, 184 P.3d 903 (2008) (quoting *State v. Hays*, 221 Kan. 126, Syl. ¶ 1, 557 P.2d 1275 [1976]).

The record supports Keenan's contention that the district court judge erred in applying the wrong legal standard—evaluating the facts for the existence of reasonable

11

suspicion rather than the more demanding probable cause. Reasonable suspicion is a much lower standard than probable cause and may be established with less reliable information. *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998). However, we agree with the Court of Appeals panel that probable cause to arrest nevertheless existed. *Keenan*, 50 Kan. App. 2d at 365-66; see *Sloop*, 296 Kan. at 22 (Supreme Court may decide probable cause question on undisputed facts in DUI case despite failure to analyze in district court).

Although Madl saw Keenan commit no traffic infractions, she and Hinkle responded to Keenan's home based on Hynes' telephone tip reporting that Keenan was driving home drunk and had his son with him. See *Aguilar v. Texas*, 378 U.S. 108, 113-14, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) (use of informants can be an acceptable method of establishing probable cause). "[P]robable cause can be based solely on information from a reliable, credible informant." *United States v. Long*, 774 F.3d 653, 660 (10th Cir. 2014), *cert. denied* 135 S. Ct. 2068 (2015). Probable cause for a warrantless law enforcement action may rely upon information received through an informant, rather than upon an officer's direct observation, "'"so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."'" [*United States v. Mathis,*] 357 F.3d 1200, 1204 (10th Cir. 2004) (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697 [1960])." *Long*, 774 F.3d at 659.

All of the particulars of Hynes' tip were corroborated by the officers' personal, direct observations. Keenan was driving the vehicle described; he arrived at his home when expected; his son was with him; Keenan smelled of alcohol; and he stumbled while carrying his son. See *State v. Slater*, 267 Kan. 694, 703, 986 P.2d 1038 (1999) ("An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant."). These observations combined with the detailed tip from identified informant Hynes supplied substantial competent evidence to support probable cause to arrest Keenan for DUI.

12

Ordinarily, we would next turn to the question of the existence of exigent circumstances, the question on which the parties have concentrated their efforts during the proceedings on petition for review. Indeed, when Keenan's petition for review was granted, this court anticipated that this case would provide an opportunity to fill in the blanks the Court of Appeals noted in Kansas law on the exigencies that may arise because of the changeable nature of blood-alcohol evidence in DUI prosecutions. But, on closer examination, we have determined that this case cannot bear the weight intended for it.

Even if we were to conclude that Keenan was correct and there were no exigent circumstances to justify the officers' entry into his home, meaning all evidence obtained as a result of that entry should have been suppressed, the district judge's error would be examined on appeal for harmlessness. See *State v. James*, 301 Kan. 898, 910, 349 P.3d 457 (2015) (where case turns on Fourth Amendment analysis, constitutional error may be declared harmless when party benefitting from error demonstrates beyond a reasonable doubt that error did not affect outcome of trial in light of the entire record). After reviewing the entire record here, we are convinced beyond a reasonable doubt that the additional, largely cumulative evidence obtained as a result of the officers' entry into Keenan's home and later search of his vehicle did not affect the outcome of his trial. Before the entry, the officers were acting on a highly reliable tip from a known informant who personally observed Keenan display multiple signs of intoxication and yet place his son in his vehicle to drive him to his home. The officers corroborated every aspect of this tip with their own observations. They had probable cause to arrest and could have arrested Keenan for DUI without a warrant at this point. Instead, they behaved in a calm and humane way, allowing Keenan to put his young son inside and out of the sleet late at night. They then appropriately effected the arrest they could have made moments before on the other side of the home's exterior door.

13

Under these circumstances, we need not reach the issue we anticipated, and we do not decide whether the officers' entry into Keenan's home was permissible because of the exigent circumstances of the loss, concealment, or destruction of evidence or the doctrine of hot pursuit. We simply hold that, even if the entry was illegal, any error by the district judge was harmless. See *State v. Thomas*, 302 Kan. 440, 453, 353 P.3d 1134 (2015) (if lawfully obtained information sufficient, standing alone, to support requisite probable cause to issue warrant, inclusion of unlawfully obtained information will not invalidate warrant).

CONCLUSION

Although the reasoning of this court differs, as discussed above, we affirm the judgment of the district court and the decision of the Court of Appeals panel.

* * *

JOHNSON, J., concurring: I agree with the majority's determination that the law enforcement officers had probable cause to arrest Keenan before he entered the house. But I would not go directly to a harmlessness holding under these facts.

As the majority points out, if the officers' warrantless entry into Keenan's home was unlawful, his rights under the Fourth Amendment to the United States Constitution were violated. In that event, the district court's refusal to suppress the evidence obtained during the unlawful search and seizure was a constitutional error. Constitutional errors "may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

14

Here, the State benefitted from the admission of any illegally obtained evidence. Therefore, the State must prove beyond a reasonable doubt that the erroneously admitted evidence had no reasonable possibility of affecting the jury's guilty verdict on the DUI charge. In my view, the State has not cleared that hurdle.

As the majority describes the events, after the law enforcement officers entered the house, they observed Keenan stumble again on his way to lay his son down in a bedroom; they experienced Keenan's failure to obey their multiple requests to hang up the telephone; and they observed Keenan's slurred speech, bloodshot eyes, and overwhelming odor of alcohol. The officers further testified that Keenan stumbled several more times, had difficulty communicating, refused to perform field sobriety tests, refused the officers' order to stay out of the kitchen where a butcher knife lay on the counter, made a veiled threat that he had taken care of cops before, and refused to take a breath alcohol test. A subsequent search of Keenan's vehicle produced a half-empty bottle of whiskey, a bottle cap, and a number of full bottles of beer.

Given that there was no evidence of the alcohol concentration in Keenan's breath or blood, the State had to prove to the jury that Keenan was "under the influence of alcohol to a degree that render[ed] [him] incapable of safely driving a vehicle." K.S.A. 2010 Supp. 8-1567(a)(3). Testimony relating the officers' post-entry observations about Keenan's physical appearance, lack of coordination, communication difficulties, and combative attitude was designed to advance the State's argument that Keenan was functioning at a high degree of intoxication. Moreover, common sense would suggest to most jurors that the presence of an open bottle of whiskey and multiple bottles of beer in a vehicle enhances the possibility that the operator was under the influence. Consequently, the State has not convinced me beyond a reasonable doubt that the above-described post-entry evidence had no reasonable possibility of affecting the jury's verdict that Keenan was driving under the influence.

15

But with respect to the officers' entry into the house after acquiring probable cause of driving under the influence, I would find that their need to protect the welfare of the child in this unique situation provided the requisite exigent circumstances, *i.e.*, there was no constitutional error. The child's grandmother had alerted law enforcement that she was concerned for the safety of the child because of Keenan's intoxication. The officers observed evidence of that intoxication and consequent danger to the child when Keenan stumbled while carrying the child from the vehicle. Moreover, getting the child inside, away from the inclement weather, contributed to the exigency of the circumstances. In short, whether one labels the situation as an exigent circumstance, hot pursuit, or emergency aid, the officers were permitted to enter the house to assure the safety and well-being of the child, before taking Keenan into custody. Accordingly, I would affirm the lower courts.