NOT DESIGNATED FOR PUBLICATION

No. 121,120

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF JUNCTION CITY,
*Appellant*,

v.

GLEN FRANKLIN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed February 21, 2020. Affirmed.

*Britain D. Stites*, city attorney, for appellant.

*Betsy K. Edwards* and *Richard A. Pinaire*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM:  Glen Franklin was arrested in Junction City for driving under the influence (DUI) and was also charged with possession of a firearm while under the influence, a violation of a Junction City ordinance. Before trial, the district court granted Franklin's motion to suppress evidence of the DUI arrest and the firearm, then dismissed the City's case. Junction City appeals, arguing that the district court erred in finding no probable cause to arrest Franklin for DUI, in suppressing the gun, and in dismissing the case. Finding no error, we affirm.

1

*Factual and Procedural Background*

Around 2 a.m. one night in February 2017, Officer Ondre Miles stopped Franklin for a suspected DUI. In an amended complaint, the City charged Franklin with a second offense DUI, refusal of a preliminary breath test (PBT), failure to maintain a lane, and possession of a firearm while under the influence. Junction City's municipal court convicted Franklin of his second DUI offense and possession of a firearm while under the influence. Franklin then appealed to the district court and moved to suppress evidence of his arrest and the gun in his car.

In his suppression motion, Franklin argued that the Kansas Supreme Court's decision in *City of Wichita v. Molitor*, 301 Kan. 251, 263, 341 P.3d 1275 (2015), required suppression of Miles' request and Franklin's refusal to take a PBT. He contended that Miles' request for a PBT was based on Franklin's horizontal gaze nystagmus (HGN) test, which the *Molitor* court had likened to a Ouija Board and a Magic 8 Ball. Franklin also argued that his arrest was based on his refusal to take a PBT so it too was inadmissible. Franklin also challenged the validity of the traffic stop, arguing it was based only on the minor infraction of failing to signal his exit from a roundabout. Finally, Franklin asserted that the gun police seized from his vehicle after his arrest should be suppressed as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

At the evidentiary hearing on Franklin's motion to suppress, the district court—citing *Molitor*—agreed with Franklin and suppressed the PBT test because Miles had requested it as a result of the HGN test results. The district court, however, allowed the hearing to continue to consider whether Franklin's initial stop was legal.

The City called Miles to establish reasonable suspicion for the initial stop and probable cause for the DUI arrest. Miles was the only person called to testify at the

2

suppression hearing. During Miles' testimony, the district court admitted the dashboard camera and body camera footage of the stop and arrest.

Miles testified that he had recently received a call from dispatch of shots fired in an area of Junction City. While patrolling that area sometime after 2 a.m., Miles drove past Franklin's car, the only vehicle in the area. While driving behind Franklin, Miles noticed that Franklin was driving erratically. Franklin rode in the middle of a two-lane road although no line demarked the lanes. Franklin swerved within his lane, entered a lane without signaling, exited a roundabout without signaling, then drifted over the center line of the road. And he failed to signal whether he was entering the left lane or the right lane after exiting the roundabout. Miles pulled Franklin over as a result of these traffic violations.

Miles testified that after he turned on his emergency lights, Franklin complied with the stop. Once Franklin was stopped, Miles approached the driver's side window. Miles first noticed that Franklin's eyes were bloodshot and watery and that Franklin's vehicle had a strong odor of alcohol. Later, Miles determined that because Franklin did not appear to have spills, wet marks, or stains on his clothing, the alcohol smell was likely coming from Franklin's mouth. Miles also noted that Franklin's speech was not slurred but was abnormal. While still in his car, Franklin told Miles that he had a 40 caliber firearm in his armrest. After that admission, Miles asked Franklin to get out of his vehicle.

Once Franklin got out of the vehicle, Miles patted him down for weapons, noted the cane in Franklin's backseat, and asked Franklin about his physical health. Franklin responded that he walked with a cane and had surgery on both knees. Franklin also told Miles that he was a disabled veteran and was taking four types of medications, including oxycodone. He admitted that he had just left a bar but said he had been there for only 10

3

minutes and only had water. And Franklin told Miles he was on his way to Clay Center, which Miles noted was in the opposite direction that Franklin was traveling.

Miles then decided to test for intoxication. To accommodate Franklin's physical needs, Miles determined it would be best to forgo the standard walk-and-turn and one-leg standard test sobriety tests. Instead, Miles asked Franklin to perform three non-standard tests. First, Miles conducted the HGN test. Miles testified that this test was still in the National Highway Traffic Safety Administration (NHTSA) manual and his department manual and that he would continue to use it until it was taken out. But in keeping with *Molitor*, Miles did not testify to the results of Franklin's HGN test.

Miles also had Franklin recite the alphabet from "C to Y". Miles testified that Franklin failed this test:

> "He started, and he went all—it's a lot of alphabets. And I'm not going to be able to remember every alphabet how he put it. He went from C to Q, and then he said U-T-Q, U-T-U, F, mm-mm, T, dang, C-U-D, C-U-D, E-F-G, H-I-J-K-L-M-N-O-P-Q-R-S-T-U-V, mm-mm, X-Y-Z. I then asked Mr. Franklin if he remember what alphabet I asked him to end with. . . He said, [X]."

Miles also conducted a counting test, asking Franklin to count backwards from "97-71." Franklin passed that test. Miles also asked Franklin to take a PBT but Franklin declined. After these tests, Miles placed Franklin under arrest.

An officer then moved Franklin's car to a nearby parking lot as Franklin had requested and seized the gun from Franklin's armrest. But the officers never sought or obtained a search warrant.

At the close of the suppression hearing, the district court denied Franklin's motion to suppress evidence of the traffic stop or the arrest. It granted Franklin's request to

4

suppress the firearm, reasoning that the police had failed to get a warrant before seizing it.

Later, the district court called the parties to notify them of its sua sponte decision to reconsider its suppression decision. At this second evidentiary hearing, as before, Miles was the only person to testify. The parties' questions mostly focused on Miles' use of the HGN test and why Miles had not used the standard walk-and-turn or one-leg turn tests. Miles admitted that the HGN test affected his DUI investigation because it showed Franklin was possibly impaired by alcohol. Miles also testified that the HGN test led him to perform the non-standard counting and alphabet tests on Franklin.

The district court's memorandum decision was broader than its earlier decision. It found that because the HGN test was inadmissible under *Molitor*, Miles' request for a PBT was unsupported by reasonable suspicion. The district court then found that "everything [Miles] did after the HGN is tainted and inadmissible." The district court then considered the circumstances before the HGN test and the request for a PBT and found that they failed to establish probable cause for Miles to arrest Franklin for DUI. The district court also held that the seizure of Franklin's gun was illegal:

> "When the officers decided to drive the car to a public parking lot and lock it up instead of having it towed, they lost the ability to search the car without a warrant. Had the police taken the car to impoundment, it could have been searched for inventory. But they chose not to."

As a result, the district court dismissed Franklin's case.

The City timely appeals.

5

*Did the District Court Err in Suppressing Franklin's DUI Arrest?*

The City first argues that the district court erred in suppressing evidence of Franklin's DUI arrest because Miles had probable cause to arrest Franklin. The City also asserts that the district court misapplied our Supreme Court's decision in *Molitor*.

Our standard of review for a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. We review the ultimate legal conclusion, however, using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The City bears the burden of proving the lawfulness of a search and seizure. *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016). "To be lawful, a warrantless arrest must be supported by probable cause." *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). The probable cause required to justify a warrantless arrest is "'the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime.'" 296 Kan. at 20. Our Supreme Court has given us guidance when considering whether this reasonable belief exists:

> "'Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.' [Citations omitted.]" 296 Kan. at 20.

We begin by asking whether the district court's decision to suppress the HGN test result and the request for a PBT were supported by our Supreme Court's decision in *Molitor*.

*The district court did not misapply the* Molitor *holding.*

The district court found that Miles had reasonable suspicion justifying his initial traffic stop of Franklin, and Franklin has not appealed that decision. But it held Miles lacked reasonable suspicion to request a PBT. In fact, the district court suppressed the HGN results and the PBT request and refusal at the beginning of the first suppression hearing, *before* hearing arguments on the matter, based on our Supreme Court's decision in *Molitor*. The City concedes that any issue about the PBT results is moot because Miles did not rely on any refusal to take the PBT in arresting Franklin, and the district court did not consider any refusal in finding Miles lacked probable cause to arrest Franklin. But the City argues that the district court erroneously suppressed all the evidence obtained after the HGN test was administered on the grounds that *Molitor* required such a result. The City argues that the district court was too broad in its application of *Molitor*, resulting in reversable error. So a brief discussion of *Molitor* is in order.

In *Molitor,* our Supreme Court held that unless the HGN test is proven to be scientifically reliable, the *results of the test* are inadmissible for any reason—including to establish reasonable suspicion to request a PBT. 301 Kan. at 264. We agree with the City that *Molitor* did not hold that the results of an HGN test are never admissible. Instead, it held that the HGN test is scientific so its reliability must be established before test results may be admitted. See 301 Kan. at 260-64.

But the City never tried to show the scientific reliability of the HGN test results. Without expert testimony concerning the HGN, the district judge was required to disregard any testimony about the results of the HGN. The City argues it did not admit

7

the results of the HGN. Yet the City asked the district court and asks this court to conclude that because the officer said the HGN results led him to continue testing—the results indicated impairment. There could be no other reason for the City to ask these questions:

> "Q: Did [the HGN test] help you in any way in your investigation regarding Mr. Franklin?
> "A: Yes."

And later:

> "Q. Would HGN in any way guide or help your investigation regarding DUI?
> "A. For alcohol, yes.
> "Q. Now, was the HGN the only test that you did with Mr. Franklin?
> "A. No, I did a non-standard sobriety test.
> "Q. Did the HGN help you -- lead you to doing those tests?
> "A. Yes."

This was an attempt to get something before the district judge through the back door that it could not get in through the front door. The judge did not and we cannot infer that Franklin was impaired based on the referenced testimony.

At this point, *Molitor* is again instructive. The Supreme Court held that when faced with an inadmissible HGN result, the court should examine the remaining circumstances to determine whether a law enforcement officer had the necessary reasonable suspicion to request further testing. See 301 Kan. at 264-66. It held: "Such a fundamental error [in admitting HGN test results without expert testimony] cannot be deemed harmless, unless the other evidence was sufficient to establish the requisite reasonable suspicion without considering the HGN test results." 301 Kan. at 264.

8

Miles testified at the rehearing that it was the results of the HGN test that led him to do further testing. The logical inference from this is that without the results of the HGN, the officer did not believe he had any reason to do further testing.  In other words, without considering what he believed to be the results of and the predictive value of the HGN, there was nothing to justify holding Franklin. Miles then testified that he next administered non-standard tests to determine whether he believed Franklin was DUI. Although the district court did not suppress those tests, it gave them little credence for reasons discussed later. So the district court still considered circumstances other than the HGN test results in determining that insufficient evidence supported Franklin's arrest. Thus, the district court did not apply *Molitor* too broadly, requiring reversal.

*The district court properly determined that Miles did not have probable cause to arrest Franklin for DUI.*

The City argues it presented evidence of multiple factors other than the HGN test results to show probable cause to arrest Franklin:

- Franklin was driving after 2 a.m.
- He admitted to being in a bar before being pulled over
- He claimed to be going to a place that was in the opposite direction he was driving
- His eyes were bloodshot and watery
- He emitted a strong odor of alcohol from his person
- He admitted to taking four medications, including Oxycodone
- He failed a non-standard alphabet test
- He committed traffic violations
  - Swerving within his driving lane
  - Failing to signal entering or exiting the roundabout

9

- Driving over the middle of the roadway of an unmarked but still two lane road before entering the roundabout
- Straddling the white-dotted line of the two lanes after exiting the roundabout, and
- Failing to signal whether he was entering the left lane or the right lane after exiting the roundabout.

The district court considered this and other evidence in finding that Miles lacked probable cause to arrest Franklin.

In its suppression order, the district court held that Miles had reasonable suspicion to stop Franklin. But Miles lacked reasonable suspicion to request a PBT and lacked probable cause to arrest Franklin for DUI. In deciding Miles lacked probable cause, the district court focused on the non-standard alphabet and counting tests that Miles administered. The court briefly explained how the alphabet test works and is administered, criticized the use of these tests as "unreliable, inaccurate, and designed to fail[,]" and noted that the test is not endorsed by the NHTSA. See *Molitor*, 301 Kan. at 267 (In contrast to non-standardized tests, the standard field sobriety tests developed by the NHTSA were developed using both laboratory studies and field studies, from which clues were identified and a scoring criteria developed to "provide an objective assessment as to the probability that the driver's alcohol concentration was at an unlawful level."). Because no such assessment has been done for "non-standardized" tests, a reasonable person could conclude that no inferences can be drawn from a person's performance on them.

The district court also found that Franklin performed the entire counting test perfectly and performed the alphabet test perfectly from "C to V." The district court also made separate findings about the use of the HGN test and whether sufficient evidence to arrest Franklin existed without the HGN test.

10

The district court acknowledged the facts about Franklin's driving, the odor of alcohol, and Franklin's admission that he had been in a bar before being pulled over. The City notes that the district court discounted some evidence—the district court cited the odor of alcohol from Franklin, instead of the "strong odor" of alcohol that Miles testified to. And the district court relied on Franklin's recitation of the alphabet test perfectly from "C to V," ignoring Franklin's failure to recite the letters properly from V to Y. But the district court explained its rationale:

> "Franklin produced his license without incident, he spoke without slurring his words (the Officer said Franklin was not slurring while talking), was not unkempt, exited and proceeded from his vehicle without losing his balance (the Officer testified that Franklin had to reach up and pull himself out of the car but the video shows that his recollection of that event is flawed), and virtually passed two non-standard tests (Defendant was asked to say the alphabet from C to Y and he became confused at V [3 more letters and he is perfect]). He passed the counting test and the court gives little or no weight to a non-standard alphabet test for the reasons stated previously. Does missing 3 letters means he got an F, a C, a B, or an A? The test is unreliable and the officer is forced to make a finding without any guidance. On a Standardized test (one legged stand and walk the line test), if a person misses one clue, he still passes the test. Here, we just don't know."

From this, the district court ultimately found that without the HGN test, Miles lacked probable cause to believe that Franklin was DUI:

> "[T]he officer said that the results of the HGN test influenced everything he did thereafter. If the officer was influenced by a test that is not to be considered by him to form reasonable suspicion then how can the court weigh the other indicia cited, ie: perhaps after he gave the HGN test and defendant failed it, the smell of alcohol became stronger and the mere drift toward a dash line became more pronounced. In other words, under the totality of circumstances, one could not reasonably suspect that Franklin was so impaired by alcohol that his level was over .08 or that he was driving in a dangerous manner. Here, the subjective observations which might suggest to the officer that Franklin was illegally intoxicated, and the results and HGN that the Supreme Court said

11

is about as accurate as a magic 8 ball, were offset by the objective indications that he was not. The court finds that Franklin was not impaired by alcohol to the point of being legally under the influence of alcohol."

On appeal, the City attempts to bolster the facts presented to the district court by comparing them to loosely relevant Kansas cases—*Keenan* and *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 553, 402 P.3d 1168 (2017), *aff'd in part and remanded* 310 Kan. 1048, 454 P.3d 600 (2019). *Keenan* reflects the unremarkable proposition that probable cause may exist even when police witness no traffic violations. 304 Kan. at 994-95. And *Chavez-Majors* shows that probable cause for DUI may exist when, as here, no standardized tests are done. 54 Kan. App. 2d at 561-62. But these cases are only minimally helpful, as the probable cause determination is made case-by-case, based on the totality of the circumstances. The City's arguments strive to have us reweigh the evidence presented to the trial court, which we are not in the position to do. See *Hanke*, 307 Kan. at 827. Nor are we merely to count the facts or factors that support one side of the determination or the other. *Sloop*, 296 Kan. at 20.

We agree that the City's evidence warrants a reasonable belief that Franklin had been drinking alcohol. But that same evidence, along with all the other evidence, does not necessarily show that Miles had a "reasonable belief" that Franklin was DUI. See *Sloop*, 296 Kan. at 20; see also *Molitor*, 301 Kan. at 263-64 (emphasizing difference between drinking and driving as opposed to "operating a vehicle *while under the influence of alcohol*"—i.e., having a blood alcohol content of .08 or more). In determining probable cause, we consider all the circumstances. The district court properly did so here. We find that substantial competent evidence supports the district court's decision that Franklin's arrest lacked probable cause.

12

*Did the District Court Err in Suppressing Franklin's Firearm?*

The City argues that the district court erred in suppressing Franklin's gun because the warrantless search and seizure falls within the probable cause plus exigent circumstances exception to the warrant requirement. See *State v. Sanchez-Loredo*, 294 Kan. 50, 55-56, 272 P.3d 34 (2012). The City also argues that the warrantless search of Franklin's car falls within the search-incident-to-arrest exception. The district court ruled that a warrant was necessary because the officers did not impound the car, which would have permitted an inventory search. It did not address other theories.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). "[A] warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement." *Sanchez-Loredo*, 294 Kan. at 55. The recognized exceptions are consent, search incident to lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches. 294 Kan. at 55.

*The automobile exception does not apply.*

The City first argues that the automobile exception applies. That exception requires probable cause plus exigent circumstances. Under this exception:

> "'Probable cause' to search a vehicle can be established if the totality of the circumstances indicates there is a 'fair probability' that the vehicle contains contraband or evidence. *State v. Davis*, 31 Kan. App. 2d 1078, 1084, 78 P.3d 474 (2003), *rev. denied* 277 Kan. 925 (2004). . . .
> "But probable cause must be accompanied by exigent circumstances to permit a circumvention of the Fourth Amendment's warrant requirement." 294 Kan. at 55-56.

13

""Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband."'" 294 Kan. at 56. Mobility of a vehicle "inherently creates the possibility that evidence which an officer has probable cause to believe is contained in the vehicle could be lost." 294 Kan. at 59. Accordingly, the mobility of a vehicle provides the exigent circumstances to support a warrantless vehicle search based on probable cause. Because Franklin's vehicle was still mobile at the time he was arrested, exigent circumstances existed.

But we are upholding the district court's ruling that Miles lacked probable cause to believe Franklin was under the influence of alcohol. Junction City Ordinance 220.785(a) criminalizes possession of a firearm only while under the influence of "alcohol, or drugs, or both." To be guilty of this crime, a person must be under the influence of an intoxicant "to such a degree as to render such person incapable of safely operating a firearm." Junction City Ordinance 220.785(a); see Junction City Code of Ordinances https://library.municode.com/ks/junction_city/codes/code_of_ordinances?nodeId=COOR _TITIIPUHESAWE_CH220OF_ARTIXOFAGPUSA_S220.785POFIWHUNIN (last visited February 13, 2020). That requirement is not met. Miles lacked probable cause to believe that Franklin was under the influence of alcohol or drugs, and no evidence shows that Franklin was intoxicated to such a degree as to render him incapable of safely operating a firearm. Based on the evidence presented to the district court, Miles could not reasonably have believed that Franklin was under the influence to the extent required under Junction City Ordinance 220.785(a).

And no evidence showed that the gun was evidence or contraband of some other crime. To the extent the City suggests that Miles had probable cause to believe Franklin was the shooter that prompted the dispatcher's call of "shots fired," such an argument is unsupported by the evidence. Miles did not testify that he believed Franklin could be the

14

alleged shooter or that the gun in Franklin's car could be the gun fired. Thus, we cannot apply the probable cause plus exigent circumstances exception.

Finally, Franklin mentions that Junction City Ordinance 220.785(a) may be preempted by K.S.A. 75-7c17, which requires uniformity in statewide provisions about concealed carry licensing. But this argument is conclusory and unsupported by authority. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (a point raised incidentally in a brief and not argued in it is considered abandoned).

*The search incident to arrest exception does not apply.*

The City next contends that we should apply the search-incident-to-arrest exception to the warrant requirement. See *State v. Perkins*, 55 Kan. App. 2d 372, 377, 415 P.3d 460 (2018), *aff'd* 310 Kan. 764, 449 P.3d 756 (2019). But this exception applies only when the search is conducted after a *lawful* arrest and other conditions are met. Because Franklin's warrantless arrest was unsupported by probable cause, it was illegal. See *Sloop*, 296 Kan. at 20. As a result, the district court properly suppressed the gun seized from Franklin's car as fruit of the poisonous tree. See *State v. Tatro*, 310 Kan. 263, 269, 445 P.3d 173 (2019) (explaining fruit of poisonous tree doctrine).

*Did the District Court Err in Dismissing Franklin's Case?*

The City argues that even if the district court properly suppressed the evidence, it should not have dismissed the case. Franklin counters that the district court had to dismiss the case because all the evidence collected after the HGN test was tainted by Miles' use of the HGN test, and the suppression left the City with no evidence to convict Franklin of a crime.

15

We review the district court's ultimate legal conclusion using a de novo standard of review. *Hanke*, 307 Kan. at 827.

The City relies on *State v. Gray*, 270 Kan. 793, Syl. ¶ 2, 18 P.3d 962 (2001), where our Supreme Court held:

> "When a finding has been made that a person charged with driving under the influence of alcohol (DUI) properly rescinded his or her initial refusal to take a chemical test and the arresting law enforcement officer does not give the test, the proper remedy is to suppress any reference to testing procedures and not to dismiss the charges where other evidence is alleged to exist sufficient to substantiate the DUI charge."

We agree with the general rule that where other evidence may be enough to support a criminal charge, the proper remedy is not to dismiss the charge but to suppress the evidence obtained by the Fourth Amendment violation. Whether to proceed based on evidence not suppressed generally rests in the discretion of the prosecutor, who can assess the weight of the remaining evidence and determine if it is sufficient to prove a crime beyond a reasonable doubt. A defense attorney who disagrees is free to move to dismiss. A district court's sua sponte dismissal after granting suppression may be unusual, yet is not unheard of. See, e.g., *State v. Garza*, 295 Kan. 326, 330, 286 P.3d 554 (2012); *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004).

Under the circumstances here, dismissal was compelled by the findings that we uphold. The district court not only suppressed evidence of the HGN results and the gun, it found no probable cause to arrest Franklin for DUI, even considering facts that *preceded* the HGN test. The district court has already considered all the non-HGN evidence that the City alleges is sufficient to charge Franklin with DUI. That evidence includes Miles' testimony that Franklin was stopped after 2 am for traffic violations, his eyes were watery and bloodshot, he had a strong smell of alcohol emanating from him, he admitted to being in a bar, he admitted to taking prescription drugs, and he failed a non-standardized,

16

alphabet test. We affirm today that this evidence is not enough under the totality of the circumstances of this case to constitute probable cause to arrest for DUI. Because the City offered no other evidence to support the charge, dismissal is appropriate.

Similarly, no other evidence could lead to Franklin's conviction on the firearm charge under Junction City Ordinance 220.785(a). Although the City has Franklin's admission that he had a gun in the car, the City charged Franklin only with an ordinance that requires the City to show he possessed the firearm while under the influence of alcohol or drugs, meaning he was under the influence of an intoxicant to such a degree as to make him incapable of safely operating a firearm. Yet to meet that showing, the City has no evidence that was not already considered and rejected by the district court. Under these circumstances, we find no error in the dismissal of the case.

Affirmed.